IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ELAINE ARMSTEAD,

                  Plaintiff,

      v.                                          1:14-cv-586-WSD

ALLSTATE PROPERTY &
CASUALTY INSURANCE
COMPANY and WEBB,
ZSCHUNKE, NEARY
& DIKEMAN, LLP,

                  Defendants.

## OPINION AND ORDER

    This matter is before the Court on Defendant Allstate Property & Casualty

Insurance Company's ("Defendant" or "Allstate")[1] Motion to Dismiss [4] and

Plaintiff Elaine Armstead's ("Plaintiff" or "Armstead") Motion to Remand [13].

Also before the Court is Allstate's Motion for Leave to File a Response in

Opposition to Plaintiff's Motion to Remand [16] ("Motion for Leave").[2]

---

[1]    On February 25, 2014, the State Court of Fulton County granted Plaintiff's
motion to voluntarily dismiss her claims against Allstate's counsel, Webb,
Zschunke, Neary & Dikeman, LLP.  Allstate is the only defendant remaining in
this action.

[2]    Plaintiff filed her Motion to Remand on May 9, 2014, and Allstate's
response, if any, would have been due on May 26, 2014.  Because May 26, 2014,
was a legal holiday, Allstate's Response was thus due on Tuesday, May 27, 2014.
See LR 7.1(B), NDGa. (response to motion, other than for summary judgment, due
14 days after service of motion); Fed. R. Civ. P. 6(d) (when service of motion was

## I.   BACKGROUND

This is an insurance coverage dispute in which Plaintiff seeks coverage, under a homeowner's insurance policy issued by Allstate (the "Policy"), for damage caused to her home by a fire in her kitchen.  Plaintiff asserts claims for breach of contract, promissory estoppel and bad faith against Allstate for refusing to pay the full amount of her damages claimed under the Policy.  Plaintiff also asserts several claims based on the manner in which Allstate processed Plaintiff's claim for coverage under the Policy.  Allstate contends that most of the claims in Plaintiff's Complaint must be dismissed because they are precluded, as a matter of law, in an action based on an alleged breach of contract.

### A.   Facts

On December 7, 2011, Plaintiff's home was damaged by an accidental grease fire.  (Compl. [1.1] at 3).  Plaintiff asserts that the fire caused damage to her kitchen cabinets, countertop, stove and parquet floor, and caused smoke to go throughout the home.  (Id.).  Plaintiff also asserts that the "lights in her kitchen were flickering on and off."  (Id.).

---

made electronically, add 3 days to response deadline); Fed. R. Civ. P. 6(a)(1)(C) (time limit to act extended to first accessible day after a Saturday, Sunday, or legal holiday, if last day of period falls on one of those days).  Because Allstate's Motion for Leave, and its Response in Opposition to Plaintiff's Motion to Remand, were filed on May 28, 2014—just one (1) day after the response due date—and there is no prejudice to Plaintiff because Allstate relies only on the allegations in Plaintiff's Complaint, Allstate's Motion for Leave is granted *nunc pro tunc*.

Plaintiff reported the fire to Allstate.  (Id.).  She requested "emergency services and Allstate dispatched a company called Steamatic to clean the house." (Id.).  Allstate also recommended that Plaintiff stay in a hotel while her home was being cleaning and repaired.  (Id.).

On December 13, 2011, Erin Verville ("Verville"), an Allstate adjuster, inspected the damage to Plaintiff's home.  (Id.).  Aubrey Brown ("Brown"), Plaintiff's contractor, and Breinard Miller ("Miller"), Plaintiff's nephew, were also present during Verville's inspection.  (Id. at 4).  Verville estimated the cost to repair the damage caused by the fire would be $2,771.50.  (Id.).  Based on Verville's estimate, Allstate issued a check to Plaintiff in the amount of $1,467.35. (Id.).  Plaintiff did not cash or deposit the check.  (Id.).

Plaintiff claims that Verville's estimate was not complete, including because it "did not address the electrical damages and did not provide for complete replacement of burned cabinets, burned countertop, damaged parquet floor, damaged carpet and did not provide for any cleaning of the home.  It also failed to provide for cleaning and replacement of damaged contents."  (Id.).  Plaintiff contends that Verville's estimate "was not enough to restore Plaintiff's home to its pre-fire condition," because "Allstate wanted to pay for patchwork that would not match the existing structures, leaving the home asthetically [sic] less attractive than

3

it was" before the fire.  (Id.).  Plaintiff attempted to contact Verville to discuss her disagreement with Verville's estimate, but Verville did not return Plaintiff's telephone calls and messages.  (Id.).

On December 21, 2011, Plaintiff spoke to another Allstate representative regarding the damage to Plaintiff's home, including the damage she claims Verville's estimate did not include and the "lack of compensation for food and lodging."  (Id. at 5).

Allstate retained Paul Davis Restoration, a third-party contractor, to conduct another inspection of the damage to Plaintiff's home.  (Id.).  On December 21, 2011, Paul Davis Restoration inspected Plaintiff's home and prepared an estimate, totaling $5,398.76.  (Id.).  Plaintiff claims that Paul Davis Restoration's estimate was not complete, including because "Paul Davis [sic] was not willing to replace the kitchen cabinets, floor, or carpet and was not going to address the living room and attic insulation repairs, etc.," and it did not include repair and replacement of contents.  (Id.).  Miller, Plaintiff's nephew, also told Verville that Paul Davis Restoration's estimate failed to include damage to wallpaper, carpet, countertop and floor, and smoke damage, including in the attic.  (Id. at 6-7).

On December 23, 2011,[3] Plaintiff contacted Steamatic to re-clean the carpet

---

[3]    That Plaintiff's Complaint states "December 23, 2013," appears to be a typographical error.  (Compl. at 5).

and some of the personal contents damaged by smoke.  (Id. at 5).

On December 29, 2011, Allstate sent to Plaintiff a letter stating that Allstate was "in the 'process of concluding the claim' that [it would] 'continue to update [her] on the status of the claim until it is resolved' and that [it] 'expect[s] this will be resolved in 30 days or sooner.'"  (Id. at 6) (second alteration in original).

On December 30, 2011, Plaintiff sent to Allstate an estimate prepared by Brown, Plaintiff's contractor.  (Id. at 6 & Ex. B [1.1 at 46-49]).  Brown estimated the cost to repair the damage caused by the December 7, 2011, fire would be $8,934.42.  (Id.).

On January 6, 2012, Plaintiff had Steamatic re-clean the carpet to address the spots which had not been on the carpet prior to the fire.  (Id. at 6).  Plaintiff asserts that "[t]he spots got worse."  (Id.).

On January 7, 2012, Plaintiff sent to Allstate copies of "receipts for food as additional living expenses."  (Id.).

On January 17, 2012, Allstate issued payment to Plaintiff, in the amount of $921.34, to replace her stove.  (Id. at 7).  Plaintiff deposited the check and "was informed that the check . . . bounced causing her account to be overdrawn."  (Id.).

On January 24, 2012, Paul Davis Restoration told Plaintiff that Verville "had communicated on Allstate's behalf that Plaintiff was going to use her own

5

contractor." (Id. at 6).  Plaintiff asserts that she "specifically informed Allstate to use [its] own contractors as long as all repairs were made and her property restored to its pre-fire condition." (Id.).  At some point, Plaintiff "decided she did not want to use Allstate's contractor because his estimates were inadequate and left off obvious damages." (Id. at 7).

On January 26, 2012, Plaintiff spent an evening at her home instead of a hotel, and "felt sick and experienced difficulty breathing due to mold that had developed in the carpet as a result of inadequate and delayed cleaning." (Id.).  Plaintiff returned to the hotel and stayed there until January 31, 2012.  (Id.).

On January 30, 2012, Plaintiff again sent to Allstate receipts for additional living expenses in response to Allstate's claim that it did not receive her prior submission.  (Id.).

In response to Plaintiff's complaints that the carpet was "discolored" and "moldy" after Steamatic cleaned it, Steamatic again inspected Plaintiff's carpet on January 31, 2012.  (Id.).  Steamatic stated that they are "not wasting time and money cleaning the carpet." (Id.).  Steamatic sent photographs of the carpet to Verville, but Verville claims she did not received them.  (Id. at 7-8).

On January 31, 2012, Paul Davis Restoration "revised" the total amount of its estimate to $6,857.51, which is $1,458.75 more than its original estimate of

$5,398.76.  (Id. at 7).  Plaintiff claims that this was "still not a complete estimate," and Plaintiff again disputed the amount of the estimate.  (Id.).

On February 17, 2012, Plaintiff's counsel "wrote to Allstate and submitted estimates on Plaintiff's behalf."  (Id. at 8).  On February 24, 2012, in response to the letter, Verville stated that "Plaintiff had 'cancelled' Allstate's contractor," and that "Allstate will issue Payment to Ms. Armstead."  (Id.).

On May 29, 2012, Plaintiff "was hospitalized due to the stress caused by Allstate's claims handling practices and not having full use of her home."  (Id.).

In June 2012, Plaintiff submitted to Allstate an estimate for repairs, in the amount of $14,500.00, prepared by Unique Home Improvement.  (Id.).

On July 4, 2012, Allstate issued payment to Plaintiff in the amount of $1,467.35.  (Id.).

On August 3, 2012, Plaintiff retained Bruce Fredrics ("Fredrics"), a "public adjuster,"[4] "to demand an appraisal pursuant to the [Policy]."  (Id.).

On August 8, 2012, Allstate issued to Plaintiff a replacement check, in the amount of $921.34, for damage to Plaintiff's stove.  (Id. at 9).

---

[4]     Georgia law defines a "public adjuster" as "any person who solicits, advertises for, or otherwise agrees to represent only a person who is insured under a policy covering fire . . . and other physical damage to real and personal property . . . and who, for compensation on behalf of an insured . . . [a]cts or aids . . . in negotiating . . . a claim for loss or damage covered by an insurance contract . . . ."  See O.C.G.A. § 33-23-1.

On October 29, 2012, Plaintiff "invoked the appraisal clause" of the Policy and demanded appraisal.  (Id.).

On December 12, 2012, Allstate rejected Plaintiff's demand for appraisal and requested that Plaintiff submit a sworn proof of loss.  (Id.).

On February 3, 2013, Plaintiff submitted to Allstate her sworn proof of loss (the "Proof of Loss").  (Compl. at 9 & Ex. E [1.1 at 55]).  Plaintiff states that the amount of her "whole loss and damage" is $76,409.43, that she has a $500.00 deductible under the Policy, and that the "amount claimed" under the Policy is $75,909.43.  Plaintiff asserts that the amount claimed in her Proof of Loss is supported by an estimate prepared by Fredrics.  (Compl. at 9).[5]

On March 4, 2013, Allstate demanded a second inspection of the property, which it conducted on March 22, 2013.  (Id.).

On April 12, 2013, Allstate requested that Plaintiff submit to an examination under oath.  (Id.).

On May 13, 2013, Plaintiff sent to Allstate a letter demanding that Allstate affirm or deny coverage under the Policy for the December 7, 2011, fire.  (Compl. at 10 & Ex. F [1.1 at 56-58]).

On June 12, 2013, Plaintiff submitted to her examination under oath. (Compl. at 9).  Plaintiff asserts that "she was subjected to several hours of

---

[5]     Plaintiff did not submit a copy of Fredrics's estimate with her Complaint.

questioning," and that "[m]any of the questions asked were directed at information already provided to Allstate by Plaintiff."  (Id. at 10).

In July 2013, Plaintiff obtained an estimate, in the amount of $48,347.11, from a second public adjuster, Jeffrey Pellett ("Pellet").  (Compl. at 10 & Ex. G [1.1 at 59-81]).  Plaintiff submitted Pellett's estimate to Allstate "not long after." (Compl. at 10).

On October 4, 2013, Plaintiff sent to Allstate a "Statutory Bad Faith Demand Letter" pursuant to O.C.G.A. § 33-4-6 ("Demand Letter"), demanding that Allstate pay to Plaintiff $76,409.43, the total amount of Fredrics's estimate, for the damage to Plaintiff's home as a result of the December 7, 2011, fire.  (Compl. at 10 & Ex. H [1.1 at 82-83]).  Plaintiff's Demand Letter states that "Allstate failed to pay a fair and adequate amount on [Plaintiff's] claim," "rejected the appraisal demand and refused to participate in appraisal, in breach of the [Policy]," and that, "[i]f Allstate fails to pay the demanded amount or some other mutually agreeable amount within 60 days, [Plaintiff will] proceed with an immediate lawsuit seeking all damages permitted by law including bad faith damages and attorney fees." (Demand Letter at 1-2).

On December 2, 2013, Allstate rejected Plaintiff's claim, stating that "Allstate made significant payments to, and for the benefit of, Ms. Armstead as a

result of this claim," and "Allstate remains firm in its previously communicated position that no additional payments are due or payable under the [Policy]." (Compl. at 10 & Ex. I [1.1 at 84]).

 B. <u>Procedural History</u>

 On December 6, 2013, Plaintiff filed her Complaint in the State Court of Fulton County, Georgia,[6] asserting claims against Allstate for: breach of contract (Count I); breach of implied covenant of good faith and fair dealing (Count II); bad faith (Count III); promissory estoppel (Count IV); unfair claims settlement practices (Counts V and VI); and negligent hiring, retention, supervision and training (Count VII).  Plaintiff also asserts claims against Allstate and its counsel, Webb, Zschunke, Neary & Dikeman, LLP ("WZND"), for: violation of the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO") (Count IX); punitive damages (Count X); and attorney's fees (Count XI).

 On February 25, 2014, the State Court of Fulton County granted Plaintiff's motion to voluntarily dismiss without prejudice her claims against WZND.  ([1.4]).

 On February 27, 2014, Allstate removed the Fulton County action to this Court on the basis of diversity of citizenship.  (Notice of Removal [1]).  Allstate asserts that that the amount in controversy exceeds $75,000.00, and that complete diversity now exists among the parties because Plaintiff is a Georgia citizen and

---

[6] No. 13EV018765C.

Allstate, the only remaining defendant, is an Illinois corporation with its principal place of business in Illinois.

On March 26, 2014, Allstate moved to dismiss Plaintiff's claims for: breach of the implied covenant of good faith and fair dealing (Count II); unfair claims settlement practices (Counts V and VI); negligent hiring, retention, supervision and training (Count VII); fraud (Count VIII); Georgia RICO (Count IX); punitive damages (Count X); and attorney's fees (Count XI). Allstate did not move to dismiss Plaintiff's claims for breach of contract (Count I), bad faith (Count III), or promissory estoppel (Count IV).

On April 9, 2014, Plaintiff filed her Brief in Partial Opposition to Defendant's Motion to Dismiss [6]. Plaintiff states that she "does not have sufficient evidence to proceed on her claims for fraud and RICO and hereby seeks leave of court to have those claims dismissed." (Pl's Br. in Opp. at 21).[7]

On May 9, 2014, Plaintiff filed her Motion to Remand [13]. Plaintiff asserts that the Court does not have diversity jurisdiction over this matter because Plaintiff's Complaint does not demand a specific amount in damages, and in her most recent offer of judgment, sent to Allstate on May 9, 2014, Plaintiff demands

---

[7]    The heading on page 21 of Plaintiff's Brief in Partial Opposition states that "Plaintiff seeks dismissal of Counts IV (Promissory Estoppel), VIII (Fraud) and IX (RICO)," but the following paragraph states only that "Plaintiff does not have sufficient evidence to proceed on her claims for fraud and RICO and hereby seeks leave of court to have those claims dismissed." (Pl's Br. in Opp. at 21).

only $48,347.11.  Plaintiff also contends that Allstate waived its right to removal because, under the terms of the Policy, Allstate "consents to Plaintiff's choice of either state or federal court," and "if removal is permitted, then the clause providing Georgia law 'shall' govern all disputes, is rendered meaningless, with its purpose defeated."  (Mot. Remand at 9).

On May 28, 2014, Allstate filed its Response in Opposition to Plaintiff's Motion to Remand [17].  Allstate argues that the amount in controversy exceeds $75,000.00 because Plaintiff's Complaint seeks damages arising from the December 7, 2011, fire at Plaintiff's home, and, based on Plaintiff's Proof of Loss and her Demand Letter, which were submitted with her Complaint, Plaintiff claims damages in the amount of at least $75,909.43.  Allstate also contends that it did not waive its right to removal because the plain language of the Policy states that "[n]othing in this provision, Where Lawsuits May be Brought, shall impair any party's right to remove a state court lawsuit to federal court."  (Def's Resp. at 5).

On July 15, 2014, the parties filed their Proposed Consent Order [23], seeking to dismiss Plaintiff's claims for breach of the implied covenant of good faith and fair dealing (Count II) and unfair claims settlement practices (Counts V and VI).  On July 18, 2014, the Court entered its Order [24] dismissing these claims.

The Court first considers Plaintiff's Motion to Remand.

## II.   DISCUSSION

### A.   Plaintiff's Motion to Remand

#### 1.   Legal Standard

"Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a).  Defendant removed this action on the ground that the Court has federal diversity jurisdiction, which extends to "all civil actions where the amount in controversy exceeds the sum or value of $75,000," and is between "citizens of different states."  See 28 U.S.C. § 1332(a)(1), (2).  The parties agree that Plaintiff and Allstate are citizens of different states,[8] but they dispute whether the amount in controversy has been satisfied.  It is well-settled that the jurisdictional amount is determined as of the date of removal.  Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 751 (11th Cir. 2010).

---

[8]      In her Motion to Remand, Plaintiff states that Allstate is an Illinois corporation, "but [is] registered to do business in the State of Georgia, and in fact has offices all over the state of Georgia," "issues insurance policies of all kinds . . . to residents of Georgia," advertises in Georgia, and has claims adjusters in Georgia.  (Mot. Remand at 1-2).  To the extent Plaintiff appears to argue that complete diversity does not exist based on Allstate's contacts with Georgia, it is well-settled that "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ."  28 U.S.C. § 1332(c).  Plaintiff does not dispute that Allstate is a corporation organized under Illinois law and that Allstate's principal place of business is in Illinois.  Allstate is therefore a citizen of Illinois only, and complete diversity exists between Plaintiff, a Georgia citizen, and Allstate, an Illinois citizen.

13

When a case is removed to federal court, a removing defendant must file a notice of removal "containing a short and plain statement of the grounds for removal."  28 U.S.C. § 1446.  "If a plaintiff makes 'an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy *more likely than not* exceeds the . . . jurisdictional requirement.'"  Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1061 (11th Cir. 2010) (quoting Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996) overruled on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000)).

Although the defendant must prove by a preponderance of the evidence that the amount in controversy is satisfied, it may do so in two ways.  In some cases, it may be "facially apparent" from the complaint that the amount in controversy exceeds $75,000, even where "the complaint does not claim a specific amount of damages."  Id. (quoting Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001)).  Where a defendant alleges that removability is apparent from the face of the complaint, the district court may use its "judicial experience and common sense" to determine if the amount in controversy has been met.  Id. at 1062.  In evaluating the complaint allegations, the district court is not required to "suspend reality or shelve common sense in determining whether the face of the

complaint establishes the jurisdictional amount." <u>Pretka</u>, 608 F.3d at 770 (quoting

<u>Roe v. Michelin N. Am., Inc.</u>, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)).  There

must, however, be sufficient allegations in the complaint for a court to conclude

that the jurisdictional amount is met.  Although a court may use its common sense

in light of its judicial experience in deciding if the allegations in the complaint, as

well as deductions and inferences from them, support a finding that the amount in

controversy has been alleged sufficiently, such deductions and inferences must be

reasonable and supported in the complaint.  <u>Arrington v. State Farm Ins. Co.</u>,

No. 2:14-CV-209, 2014 WL 2961104 at *6 (M.D. Ala. July 1, 2014).

 If the jurisdictional amount cannot be determined from the face of the

complaint, the removing defendant may "provid[e] additional evidence

demonstrating that removal is proper." <u>Roe</u>, 613 F.3d at 1061 (quoting <u>Pretka</u>,

608 F.3d at 753-754).  Where a defendant submits other evidence to show the

amount in controversy, a court may rely on the other evidence, as well as

reasonable inferences and deductions drawn from it, to determine if the defendant

has carried its burden to show that the jurisdictional amount exceeds $75,000.

<u>Pretka</u>, 608 F.3d at 754.  In the end, a court must use its judgment to determine if

the allegations, coupled with the other evidence submitted, show that the

jurisdictional amount requirement is satisfied.  <u>See</u> <u>id.</u>

2.   Analysis

Plaintiff's Complaint does not request a specific amount of damages.

Rather, Plaintiff seeks to recover for, among others, Allstate's alleged breach of

contract and bad faith in failing to pay the full amount of Plaintiff's claim for

coverage under the Policy.  In her February 1, 2013, Proof of Loss, which is

attached to her Complaint, Plaintiff states that the amount of damage claimed for

the December 7, 2011, fire is $75,909.43.  (Proof of Loss at 1).  Plaintiff's October

4, 2013, Demand Letter, which is also attached to her Complaint and is the basis

for her bad faith claim, states: "This letter constitutes formal demand for payment

of Ms. Armstead's claim in the amount of $76,409.43."  (Demand Letter at 2).

Plaintiff's Proof of Loss and Demand Letter thus support that, at the time of

removal, the amount in controversy more likely than not exceeded $75,000.00.[9]

See, e.g., Tuboku-Metzger v. Nat'l Sec. Fire & Cas. Co., No. 5:06-cv-379 CAR,

2007 WL 1576440 (M.D. Ga. May 30, 2007) (although plaintiffs did not specify

---

[9]       To the extent Allstate, based on Verville's estimate, admitted liability for
Plaintiff's loss in the amount of $2,771.80, the amount-in-controversy requirement
is still satisfied because the difference between Verville's estimate and the amount
demanded in Plaintiff's Demand Letter is $73,637.63, and, if successful on her bad
faith claim, Plaintiff would be entitled to recover, at a minimum, an additional
$5,000 plus her reasonable attorney's fees.  See O.C.G.A. § 33-4-6 (penalty for
insurer's bad faith refusal to pay amount of insured's loss is, "in addition to the
loss, not more than 50 percent of the liability of the insurer for the loss or
$5,000.00, whichever is greater, and all reasonable attorney's fees for the
prosecution of the action against the insurer.").

amount of damages, it was "facially apparent" from complaint that jurisdictional amount in controversy was satisfied where plaintiffs sought damages of $51,027.54 for their loss, plus bad faith damages, under O.C.G.A. § 33-4-6, of 50% of the loss amount, and attorney's fees estimated at one-third of their projected recovery); Southern Ins. Co. of Va. v. Karrer, No. 3:10-cv-84 (CAR), 2011 WL 1100030, at *3-4 (M.D. Ga. Mar. 22, 2011) (amount in controversy determined by, among others, damages estimated in demand letter).[10]  Because Plaintiff and Defendant are citizens of different states and, at the time of removal, the amount in controversy exceeded $75,000.00, the Court has subject-matter jurisdiction over this action.  Plaintiff's Motion to Remand is on this basis denied.

Plaintiff next argues that, under the terms of the Policy, Allstate waived its right to removal.  The Court disagrees.  The Policy provides, in pertinent part:

---

[10]    To the extent Plaintiff appears to argue that the amount-in-controversy requirement is not satisfied because, on May 9, 2014, Plaintiff sent to Allstate an offer of judgment demanding $48,347.11 as payment for her claims, it is axiomatic that the jurisdictional amount in controversy is determined as of the date of removal, and thus Plaintiff's post-removal settlement offer cannot be a basis for remand.  See Pretka, 608 F.3d at 751; The Burt Co. v. Clarendon Nat. Ins. Co., 385 F. App'x 892, 894 (11th Cir. 2010) ("[E]vents occurring after removal, such as the post-removal amendment of a complaint . . . which may reduce the damages recoverable below the amount in controversy requirement, do not divest the district court of jurisdiction.") (citing Poore v. Am.-Amicable Life Ins. Co. of Tex., 218 F.3d 1287, 1290-91 (11th Cir. 2000) overruled in part on other grounds by Alvarez v. Uniroyal Tire Co., 508 F.3d 639, 640-41 (11th Cir. 2007)).

**What Law Will Apply**

. . . [T]he laws of Georgia shall govern any and all claims or disputes in any way related to this [P]olicy.

. . .

**Where Lawsuits May Be Brought**
. . . any and all lawsuits in any way related to this [P]olicy, shall be brought, heard and decided only in a state or federal court located in Georgia. . . .

. . .

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

(Policy, Amendatory Endorsement AP3267).  The Policy thus plainly and

unambiguously states that the Policy's choice-of-law provision and forum selection

clause "shall not impair [Allstate's] right to remove" the Fulton County action to

this Court.  See Thercy v. Allstate Prop. & Cas. Ins. Co., No. 1:13-cv-1099-RWS,

Doc. 38 at 1-2 (N.D. Ga. June 17, 2014) (rejecting plaintiff's argument, based on

same policy language, that defendant waived its right to removal; policy

specifically stated that forum selection clause and choice of law provision do not

impair right to remove state court action to federal court).  Allstate has not waived

its right to removal, and Plaintiff's Motion to Remand is on this basis also denied.

     B.    Allstate's Motion to Dismiss

          1.    Legal Standard

The law governing motions to dismiss pursuant to Rule 12(b)(6) is

well-settled.  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (dismissal appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action").

In considering a motion to dismiss, the Court must "assume that the factual allegations in the complaint are true and give the plaintiff[] the benefit of reasonable factual inferences."  Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1196 (11th Cir. 2010), cert. denied, 132 S. Ct. 245 (2011).  Although reasonable inferences are made in the plaintiff's favor, "'unwarranted deductions of fact' are not admitted as true."  Aldana v. Del Monte Fresh Produce, N.A., 416 F.3d 1242, 1248 (11th Cir. 2005) (quoting S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996)).  Similarly, the Court is not required to accept conclusory allegations and legal conclusions as true.  See Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010).

The Complaint ultimately is required to contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Mere "labels and conclusions" are insufficient.  Id. at 555.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully" or the "mere possibility of misconduct," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. at 678-79 (citing Twombly, 550 U.S. at 557).  The well-pled allegations in a complaint must "'nudge[] [a party's] claims across the line from conceivable to plausible.'" Am. Dental, 605 F.3d at 1289 (quoting Twombly, 550 U.S. at 570). [11]

2.   Analysis

Allstate moves to dismiss Plaintiff's claims for: breach of the implied covenant of good faith and fair dealing (Count II); unfair claims settlement practices (Counts V and VI); negligent hiring, retention, supervision and training (Count VII); fraud (Count VIII); Georgia RICO (Count IX); punitive damages (Count X); and attorney's fees (Count XI).  Allstate did not move to dismiss

---

[11]   Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555.

Plaintiff's claims for breach of contract (Count I), bad faith (Count III), or promissory estoppel (Count IV).

> a.   Breach of the implied covenant of good faith and fair dealing (Count II), and unfair claims settlement practices (Counts V and VI)

On July 18, 2014, the Court entered its Order [24] granting the parties' request to dismiss Plaintiff's claims for breach of the implied covenant of good faith and fair dealing (Count II) and unfair claims settlement practices (Counts V and VI).  Defendant's Motion to Dismiss Counts II, V, and VI, is denied as moot.

> b.   Negligent hiring, supervision, training and retention (Count VII)

To support a claim for negligence in Georgia, a plaintiff must show:

> (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the duty.

Bradley Ctr., Inc. v. Wessner, 296 S.E.2d 693, 695 (Ga. 1982).  However, "[a] defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law."  Fielbon Dev. Co. v. Colony Bank of Houston Cnty., 660 S.E.2d 801, 808 (Ga. Ct. App. 2008).  Georgia law is clear that "[a]bsent a

legal duty beyond the contract, no action in tort may lie upon an alleged breach of [a] contractual duty."  Id. (quoting Wallace v. State Farm Fire & Cas. Co., 539 S.E.2d 509, 512 (Ga. Ct. App. 2000)).

In Tate v. Aetna Cas. & Surety Co., the insured asserted a negligence claim against his insurer for "violating accepted standards in the industry," "using an unlicensed and incompetent adjuster and personnel," "failing to use due care to include all of plaintiff's losses under the law," "failing to properly inspect plaintiff's losses and property," and "failing to properly consider plaintiff's estimates of his loss."  253 S.E.2d 775, 776 (Ga. Ct. App. 1979).  The plaintiff alleged that he suffered delay in processing his claim and sought to recover damages for emotional suffering and his expense and time spent acquiring repair estimates.  Id.  The trial court granted the insurer's motion for summary judgment, and the Georgia Court of Appeals affirmed.  The court found that

> [e]ven where it is shown that the defendant's failure to perform resulted in great annoyance or hardship to the plaintiff, recovery in tort is available only if the insurance contract is within those certain classes of contracts that create a relation from which the law implies duties a breach of which will constitute a tort . . . .  [Although i]t is well settled that misfeasance in the performance of a contractual duty may give rise to a tort action . . . in such cases the injury to the plaintiff has been an independent injury over and above the mere disappointment of plaintiff's hope to receive his contracted-for benefit.

Id. at 777.  The court held that "[i]f the duties in question arose at all, they arose out

of the contract.  All concern the insured's actions in settling under terms of the

contract . . . [and] at most, there was a breach of contract on the part of the [insurer]

by failing to pay the plaintiff the full amount of damages owed under the terms

thereof."  Id.

Here, Plaintiff asserts that Allstate "failed to hire qualified people to inspect

Plaintiff's claim," "failed to supervise its employees in handling Plaintiff's claim,"

and "failed to provide proper training to its employees who handled Plaintiff's

claim."  (Compl. at 17).  Plaintiff asserts also that "Allstate knew or should have

known that its agent's interpretation of the [P]olicy was unreasonable," but "failed

to take corrective action concerning its agent's interpretation."  (Id.).  Plaintiff's

negligence claims are based on the manner in which Allstate processed Plaintiff's

claim for coverage under the Policy.  Allstate's alleged duty to Plaintiff arises, if at

all, under the Policy and thus can only support a claim for breach of contract.

Plaintiff does not allege that Allstate breached any duty owed to her independent of

the Policy.  See Tate, 253 S.E.2d 775; Camacho v. Nationwide Mut. Ins. Co.,

13 F. Supp. 3d 1343, 1364 (N.D. Ga. 2014) (to extent plaintiff's negligence claim

was based on "negligently and carelessly adjusting" claim and failing to process it

in accordance with industry regulations and insurer's own policies, "such relief lies

in contract, not tort," because "no independent duty to handle the claims with care

exists in tort under Georgia law"); Arrow Exter., Inc. v. Zurich Am. Ins. Co.,

136 F. Supp. 2d 1340 (N.D. Ga. 2001) (where insured asserted that insurer was

negligent in handling claims, training and employing its adjusters, granting

summary judgment for insurer "based on the general rule precluding tort liability

and the Georgia courts [sic] determination in Tate that the incompetency of

adjusters and processors does not fall within the special exception").  Plaintiff fails

to state a claim for negligent hiring, supervision, training and retention, and this

claim is required to be dismissed.

> c.    Fraud (Count VIII) and Georgia RICO (Count IX)

In her Brief in Partial Opposition to Defendant's Motion to Dismiss, Plaintiff

asserts that "she does not have sufficient evidence to proceed on her claims for

fraud and RICO and hereby seeks leave of court to have those claims dismissed."

(Pl's Br. in Opp. at 21).  The Court thus finds that Plaintiff has abandoned these

claims.  See Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)

("Because plaintiff has failed to respond to this argument or otherwise address this

claim, the Court deems it abandoned."); see also LR 7.1(B), NDGa. ("Failure to file

a response shall indicate that there is no opposition to the motion.").  Plaintiff's

claims for fraud (Count VIII) and Georgia RICO (Count IX) are dismissed.

        d.      <u>Punitive Damages and Attorney's Fees (Counts X and XI)</u>

O.C.G.A. § 33-4-6 authorizes statutory damages and an award of attorney's fees when, "in the event of a loss which is covered by a policy of insurance," the insurer refuses in "bad faith" to pay the covered loss "within 60 days after a demand has been made by the holder of the policy." O.C.G.A. § 33-4-6. Section 33-4-6 is the exclusive remedy for an insurer's bad faith refusal to pay its insured's claim, and thus punitive damages and attorney's fees are not available under any other Georgia statute. <u>See, e.g.</u>, <u>Globe Life & Acc. Ins. Co. v. Ogden</u>, 357 S.E.2d 276 (Ga. Ct. App. 1987) (because insured's action against insurer for refusal to pay claim was mere breach of contract claim, punitive damages, other than under O.C.G.A. § 33-4-6, were not available for insurer's failure to pay); <u>Adams v. Unum Life Ins. Co. of Am.</u>, 508 F. Supp. 2d 1302, 1319 (N.D. Ga. 2007) ("O.C.G.A. § 33-4-6 is the exclusive remedy for an insurer's bad faith refusal to pay insurance proceeds, and . . . claims for attorney's fees and litigation expenses under other Georgia statutes are not authorized.") (citing <u>United Servs. Auto Ass'n v. Carroll</u>, 486 S.E.2d 613, 617 (Ga. Ct. App. 1997) & <u>Howell v. So. Heritage Ins. Co.</u>, 448 S.E.2d 275, 276 (Ga. Ct. App. 1994)); <u>see also</u> O.C.G.A. §§ 13-6-10, 51-12-5.1 (unless otherwise provided by law, punitive damages not allowed for breach of contract).

Here, Plaintiff's only claims remaining in this action—breach of contract, bad faith refusal to pay the full amount of Plaintiff's claim, and promissory estoppel—are all based on Plaintiff's assertions that "Allstate failed to make payment to Plaintiff pursuant to the terms of the insurance contract" and "Allstate's failure to pay the fair market value of her claim was in violation of the promise that existed within the contract of insurance." (Compl. at 10, 14).[12] Because Section 33-4-6 provides the exclusive remedy for Allstate's alleged bad faith refusal to pay the full amount of Plaintiff's claim under the Policy, Plaintiff cannot recover punitive damages under Section 51-12-5.1, or attorney's fees under Section 13-6-11.  Plaintiff's claims for punitive damages (Count X) and attorney's fees (Count XI) are required to be dismissed.

---

[12]    The promises Plaintiff seeks to enforce arise solely under the Policy.  In support of her claim for promissory estoppel, Plaintiff asserts that "Allstate entered into a contract with Plaintiff wherein a promise was made such that Plaintiff could reasonably expect [Allstate] to act and pay the fair market value of damages covered by the [Policy] and to restore her property to the pre-loss condition," and that "Allstate's failure to pay the fair market value of her claim was in violation of the promise that existed within the contract of insurance."  (Compl. at 14).  The Court notes that, under Georgia law, "where a plaintiff seeks to enforce an underlying contract which is reduced to writing, promissory estoppel is not available as a remedy."  Adkins v. Cagle Foods JV, LLC, 411 F.3d 1320, 1326 (11th Cir. 2005); see also Bouboulis v. Scottsdale Ins. Co., 860 F. Supp. 2d 1364, 1379 (N.D. Ga. 2012) ("Georgia law bars a claim for promissory estoppel in the face of an enforceable contract. . . . As plaintiff has acknowledged the validity of the [insurance p]olicy, that policy . . . would trump any promise between the parties regarding coverage.").

III.    **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Allstate's Motion for Leave [16] is **GRANTED** *NUNC PRO TUNC.*

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand [13] is **DENIED.**

**IT IS FURTHER ORDERED** that Allstate's Motion to Dismiss [4] is **GRANTED IN PART.**  Allstate's Motion to Dismiss Plaintiff's claims for negligent hiring, supervision, training and retention (Count VII), fraud (Count VIII), Georgia RICO (Count IX), punitive damages (Count X), and attorney's fees (Count XI) is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE.**  Allstate's Motion to Dismiss Plaintiff's claims for breach of the covenant of good faith and fair dealing (Count II) and unfair claims settlement procedures (Counts V and VI) is **DENIED AS MOOT**, those claims having been dismissed in the Court's July 18, 2014, Order.


**SO ORDERED** this 3rd__ day of December, 2014.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE