IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ELAINE ARMSTEAD,

          Plaintiff,

    v.

ALLSTATE PROPERTY &
CASUALTY INSURANCE
COMPANY,

          Defendant.

1:14-cv-586-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant Allstate Property and Casualty Insurance Company's ("Defendant") Motion for Summary Judgment [28], and Defendant's Motions in Limine to Exclude the Opinion Testimony of Bruce Fredrics [33] and Brainard Miller [35].

## I.    BACKGROUND

Defendant issued a homeowner's insurance policy ("Policy") to Plaintiff Elaine Armstead ("Plaintiff") for a house in Powder Springs, Georgia. On December 7, 2011, Plaintiff's home was damaged by an accidental grease fire. Plaintiff claims that the fire caused damage to her kitchen cabinets, countertop, stove and parquet floor, and caused smoke to spread throughout the home.

Plaintiff reported the fire to Defendant.  Between 2011 and 2012, Defendant assigned an adjuster and a third-party contractor to inspect the damage to Plaintiff's house.  Plaintiff disputed the amount estimated by Defendant's representatives, and she claims that Defendant's preferred contractors and vendors did not competently repair the damage to her home.  Plaintiff alleges that the house was further damaged during the repair process.

On February 3, 2013, Plaintiff submitted to Defendant her sworn proof of loss in which she claims that the amount of her "whole loss and damage" is $76,409.43, that she has a $500 deductible under the Policy, and that the "amount claimed" under the Policy is $75,909.43.  Defendant claims that it has paid approximately $20,000 towards Plaintiff's insurance claim.

On June 12, 2013, Plaintiff submitted to an Examination Under Oath (EUO), and on July 29, 2013, Brainard Miller ("Miller"), the contractor Plaintiff retained to assess the damage to her home also submitted to an EUO.  During Miller's EUO, Plaintiff's counsel told Defendant that Plaintiff "tape recorded all her phone calls."  Miller's EUO at 31:16-18.  Miller testified that he recorded two or three of his telephone conversations with Defendant's representatives regarding Plaintiff's

claim.  Id. at 33:17-25.[1]  On August 1, 2013, Defendant's counsel emailed

Plaintiff's counsel and requested that the telephone conversations Plaintiff

recorded be produced.  Plaintiff declined on the ground that the recordings were

made in anticipation of litigation.  Plaintiff stated that she would not produce the

recordings she made unless Defendant produced any recordings it had relating to

Plaintiff's claim.

On August 2, 2013, Defendant informed Plaintiff that it did not record any

telephone conversations, and again requested Plaintiff to produce the telephone

recordings in her possession.  Plaintiff did not respond to Defendant's further

request for the recorded calls.

On September 10, 2013, Defendant again requested that Plaintiff produce

the recordings.  Plaintiff again declined to produce the recordings unless Defendant

---

[1] Defendant relies on certain of Miller's EOU statements to claim that Plaintiff "had secretly recorded her telephone conversations with Allstate representatives and her telephone conversations with third parties related to her insurance claims." Def.'s Statement of Material Facts at ¶ 7.  The portions of Miller's testimony upon which Defendant relies do not support the claim.  Plaintiff's counsel and Miller did not assert that Plaintiff recorded telephone conversations with third parties regarding her insurance claim.  The EUO testimony cited by Defendant indicates only that Plaintiff recorded her telephone conversations with Defendant's representatives and Miller recorded two or three conversations that he had with Defendant's representatives—not third parties.  Miller's EUO at 31-33.  Miller testified that he encouraged Plaintiff to record her conversations with Defendant's representatives to keep a record of events, because Defendant chose not to communicate using email.  Id. at 32: 8-17.

provided a good faith basis for the request or explained how the recordings were relevant to Plaintiff's claim.  On September 26, 2013, Defendant told Plaintiff that the recordings were relevant to the "veracity" of Plaintiff's "assertions" regarding "[Defendant's] conduct in this matter."  See Ex. H, attached to Aff. of Marvin Dikeman.  Plaintiff again refused to produce the recordings, claiming they are not relevant to issues regarding coverage, or the amount of damage claimed, under the Policy.  On October 4, 2013, Defendant told Plaintiff that it intended to cease making payments on Plaintiff's claim.  Defendant did not file a formal request seeking discovery of the recordings and did not otherwise move to require the production of the recordings.

On December 6, 2013, Plaintiff filed her Complaint in the State Court of Fulton County, Georgia, asserting claims against Defendant for breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, fraud, promissory estoppel, unfair claims settlement practices, and negligent hiring, retention, supervision and training.  Plaintiff also asserted claims against Defendant and its counsel for violations of the Georgia Racketeer Influenced and Corrupt Organizations Act, punitive damages and attorneys' fees.[2]

---

[2] On February 25, 2014, Plaintiff voluntarily dismissed her claims against Defendant's counsel in the state court action.  On February 27, 2014, Defendant removed the state court action.

On October 15, 2014, Defendant moved for summary judgment on Plaintiff's claims for breach of contract, bad faith and promissory estoppel.[3] Defendant argues that the action should be dismissed because the Policy required Plaintiff to produce the audio recordings, and by failing to do so, Plaintiff breached the terms of the Policy.  As a result, Defendant contends the Policy's "no action" provision precludes Plaintiff's claims.

## II.    DISCUSSION

### A.    Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

---

[3] On July 18, 2014, the parties agreed to dismiss Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and unfair claims settlement practices.  On December 3, 2014, the Court granted the Defendant's Motion to Dismiss Plaintiff's claims for negligent hiring, supervision, training and retention, fraud, Georgia RICO, punitive damages and attorneys' fees.  The remaining claims in the case are for breach of contract, bad faith and promissory estoppel, the claims that are the subject of this pending Motion for Summary Judgment.

purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party meets this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record."  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party," summary judgment for the moving party is proper.  Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.    Analysis

1.    *Recordings*

Section 3(a) of the Policy requires an insured, in the event of a loss, to

comply with the following Policy provision:

> a) Give us all accounting records, bills, invoices, and other vouchers,
> or certified copies, which we may reasonably request to examine and
> permit us to make copies.

The "no action" provision of the Policy provides:

> 12.    **Suit Against Us.**  No Suit or action may be brought against us
> unless there has been full compliance with all policy terms.  Any suit
> or action must be brought within one year after the inception of loss or
> damage.

Under Georgia law, "an insurance policy is simply a contract, the provisions

of which should be construed as any other type of contract.  The construction of an

unambiguous contract is a question of law for the court."  Yeomans & Assoc.

Agency, Inc. v. Bowen Tree Surgeons, Inc., 618 S.E.2d 673, 677

(Ga. Ct. App. 2005).  "Where the terms and conditions of an insurance contract are

clear and unambiguous, they must be given their literal meaning."

Adams v. Atlanta Cas. Co., 509 S.E.2d 66, 68 (Ga. App. Ct. 1998).  If the terms of

the policy are ambiguous, the ambiguities "must be strictly construed against the

insurer as the drafter of the document."  See Federated Mut. Ins. Co. v. Ownbey Enterprises, Inc., 627 S.E.2d 917, 921 (Ga. App. Ct. 2006).  "An ambiguity is duplicity, indistinctness, [or] an uncertainty of meaning or expression, and a word or a phrase is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one."  Id. (internal quotation marks and citations omitted). "Where a term or a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured."  Id.

Defendant contends that an audio recording of a telephone conversation made during the claim handling process is a document required to be given to Defendant pursuant to Section 3(a) of the Policy.  The Court disagrees.  Section 3(a) pertains to a discrete set of documents: "accounting records," "bills," "invoices" "vouchers" and "certified copies."  These categories are all types of documents that evidence the damages, repairs or remediation, and their cost, associated with a loss.  By their terms, they do not include conversations a policy holder may have had with an insured during the claim adjudication process.[4]

---

[4] The Court notes that accounts of these conversations are available to the Defendant by simply speaking with the representatives of Defendant with whom Plaintiff spoke.

Defendant also has failed to provide any legal authority that construes the documents described in Section 3(a) to include audio recordings.  The Court thus finds that Section 3(a) is not ambiguous and did not require Plaintiff to produce the recordings demanded.

Even if the Court found these terms to be ambiguous—which it does not—the terms are required to be strictly construed against Defendant as the drafter of the Policy.  Id. at 922.  Here, Defendant could have defined more broadly a policyholder's obligation to produce materials, but did not choose to do so, and thus must have meant to limit production to the discrete categories of financial documents listed in Section 3(a).  The Court concludes that Plaintiff did not breach Section 3(a) because that provision does not unambiguously require Plaintiff to produce audio recordings of telephone conversations with Defendant's representatives.  Id.  The "no action" provision, therefore, does not apply because Defendant has failed to show that Plaintiff breached the Policy's terms.

To the extent Defendant relies on Farmer v. Allstate Ins. Co., 396 F. Supp. 2d 1379 (N.D. Ga. 2005) and Roberts v. State Farm Fire and Casualty Co., No. 7:11-cv-86-HL, 2011 WL 6215700 (M.D. Ga. Dec. 14, 2011), to support that Plaintiff is required to produce all requested documents, its reliance is misplaced.  Farmer and Roberts apply the principles set out by the Georgia Supreme Court in

Halcome v. Cincinnati Ins. Co., 334 S.E.2d 157 (Ga. 1985) in cases where the insurer claims it was defrauded by a plaintiff.  In Halcome, the Georgia Supreme Court held that the insureds breached the terms of their insurance policy by failing to provide their insurer with documents or information about their bank accounts, savings accounts, tax returns and W2 forms.  Id.  The insureds argued these documents did not relate to the claims under investigation.  Id.  The Georgia Supreme Court rejected the insureds' relevance claim because there was, in Halcome, evidence of possible fraud.  A complete investigation of the claim includes an investigation of the suspected fraud, including the income-related documents requested.  Id.[5]  Because a complete investigation of the claim entitles an insurer to investigate suspected fraud, some courts have applied Halcome to require the production of documents and materials that are not specifically required by the terms of an insurance contract.  See Farmer, 396 F. Supp. 2d at 1383 (applying Halcome to conclude that insurance contract required plaintiff to provide information related to her income and sources of income, even though the

---

[5] The Court notes that the insurance contract in Halcome required the insureds to "provide us with records and documents we request."  This broad language, the Georgia Supreme Court found, encompassed documents or information about the insureds' bank accounts, savings accounts, tax returns and W2 forms.  The facts are different here.  Section 3(a) of the Policy is a narrower provision related to specific document types that cannot be construed to encompass the production of audio recordings.

requested information was not identified in the insurance contract, because the

insurer provided evidence of suspected fraud).  The request for information in

litigation to investigate a claim such as fraud is an ordinary litigation practice.

Defendant here does not claim that Plaintiff engaged in fraud.[6]  Defendant

told Plaintiff that the audio recordings were relevant to this action only because

they concern the "veracity" of Plaintiff's assertions regarding "[Defendant's]

conduct in this matter."[7]  See Ex. H, attached to Aff. of Marvin Dikeman.  Under

Georgia law, an insured is required to provide only "material information to the

---

[6] For the first time in its Reply, Defendant argues that the "extreme changes in estimates [of the amount claimed] gave Allstate a reason to question whether Plaintiff's claim was exaggerated."  Defendant's Reply at 7.  "It is well settled that issues raised for the first time in a reply brief are deemed waived."  Nelson v. La Crosse County District Attorney, 301 F.3d 820, 836 (7th Cir. 2002).  See also King v. Warden, No. 13-15362, 2014 WL 6610324, at *2 n.4 (11th Cir. 2014) ("We will not consider [new] arguments raised for the first time in a reply brief—even with a pro se party.").  Even if the Court considered this argument, it is not credible.  Defendant's own estimates of Plaintiff's loss changed significantly over time, and Defendant has not presented evidence that Plaintiff intentionally misrepresented the amount of the estimates.  Defendant also has failed to present evidence that it was investigating whether Plaintiff's estimates were exaggerated at the time the recordings were requested.  The only reason given for the request was to assess the "veracity" of Plaintiff's assertions regarding "[Defendant's] conduct in this matter."  See Ex. H, attached to Aff. of Marvin Dikeman.

[7] Defendant may claim it wants the recordings to compare against evidence offered by Plaintiff regarding her discussions with Defendant's representatives.  If so, that is, at most, an evidentiary question not one involving coverage of the insured incident.  As noted above, Defendant has access to its representatives to get their account of the conversations with Plaintiff.

insurer that the insurer is entitled to receive under the insurance policy."  See

Hines v. State Farm Fire and Casualty Co., 815 F.2d 648, 651 (11th Cir. 1987)

(internal quotation marks omitted).  Defendant failed to show that it is entitled to

receive the audio recordings under the terms of the Policy.  The Court also finds

that Defendant has not presented evidence that the audio recordings are material to

a complete investigation of the claim.  For these reasons, Plaintiff's claims are not

barred by the "no action" provision of the Policy and Defendant's Motion for

Summary Judgment is denied.

> ### 2.    *Motions in Limine*

The Court does not now consider Defendant's Motions in Limine.  Motions

in Limine regarding evidence expected at trial are governed by the Court's

Standing Order Regarding Civil Litigation (the "Standing Order").  See

http://www.gand.uscourts.gov/pdf/Standing_Order_Re_Civil_Litigation.pdf.

Paragraph 17 of the Court's Standing Order states that "when the case is set for

trial, the parties will be advised of the briefing schedule for motions in limine."  Id.

If Defendant seeks to exclude evidence at trial, it may file a motion after the Court

determines the briefing schedule for Motions in Limine.

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment is **DENIED** [28].

**IT IS FURTHER ORDERED** that Defendant's Motions in Limine to

Exclude the Opinion Testimony of Bruce Fredrics [33] and Brainard Miller [35]

are **DENIED WITHOUT PREJUDICE**.

**SO ORDERED** this 20th day of May, 2015.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE