**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**ELAINE ARMSTEAD,**

                           **Plaintiff,**

      **v.**                                      **1:14-cv-586-WSD**

**ALLSTATE PROPERTY
& CASUALTY INSURANCE
COMPANY,**

                           **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Allstate Property & Casualty Insurance Company's ("Allstate") Renewed Motion *in Limine* to Exclude the Opinion Testimony of Bruce Fredrics [109] ("Allstate's Motion").  Also before the Court is Plaintiff Elaine Armstead's ("Plaintiff") "Second Motion *in Limine* to Exclude and/or Motion to Strike All Deposition Testimony of Mark Gould and to Exclude Hearsay Documents Not Properly Authenticated and/or Where Proper Foundation Has Not Been Laid" [114] ("Plaintiff's Motion").

## I.    BACKGROUND

This is an insurance coverage dispute in which Plaintiff Elaine Armstead ("Plaintiff") seeks coverage, under a homeowner's insurance policy issued by

Allstate (the "Policy"), for damage caused to her home by a fire in her kitchen. This matter originally was set for trial on March 14, 2016.  (Order Setting Trial [47]).  On March 7, 2016, the Court entered its Order [70] on the parties' respective motions *in limine* [48], [49], [50] ("Order on the Motions *in Limine*"). In it, the Court granted Allstate's motions *in limine* and excluded the testimony of Plaintiff's purported experts Bruce Fredrics and Brainard Miller, including because Plaintiff failed to provide expert reports for each witness as required by Federal Rule of Civil Procedure 26(a)(2)(B), and Plaintiff's failure was not substantially justified.  The Court then denied, ([75], [86]), Plaintiff's motions to reconsider the Court's Order on the Motions *in Limine*, ([72], [76]).

At the pretrial conference in this matter held on March 14, 2016, the Court, without objection from the parties, continued the trial to allow Plaintiff to properly disclose her proposed expert, Mr. Fredrics.[1]  On March 14, 2016, the Court entered an Order [89] ("March 14th Order") requiring Plaintiff to file an expert report for Mr. Fredrics on or before March 23, 2016.  The March 14th Order stated that Allstate "has the right to file motions to exclude, in whole or in part, Mr. Fredrics's

---

[1]    The Court did not allow Plaintiff to cure her failure to properly disclose Brainard Miller.  (Hr'g Tr. [90] at 5).

opinions, including by filing a motion *in limine* or a <u>Daubert</u> motion." (March 14th Order at 1).

On March 23, 2016, Plaintiff filed her Rule 26 Expert Report of Bruce Fredrics [97]. The Report is sixty-seven pages long, contains twenty attachments, and large portions of it appear to be block quotes from certain manuals or treatises. On May 27, 2016, Allstate filed its Motion. In it, Allstate seeks to exclude Mr. Fredrics's testimony on the following grounds: (1) Mr. Fredrics's contingent interest in the outcome of this case should bar his testimony; (2) he should not be allowed to give opinions and conclusions regarding Allstate's alleged duties under the insurance policy or coverage issues; and (3) he should not be allowed to give opinions and conclusions regarding Allstate's alleged bad faith claim handling. Allstate also argues that Jeffrey Pellet, another adjuster with United States Adjusters, should not be allowed to give expert testimony because Plaintiff did not file a proper Rule 26 expert report for Mr. Pellet.

On May 27, 2016, Plaintiff filed her "Trial Breif [sic] on Admissibility of Standards and Regulations of Insurance Companies as Evidence of Good Faith" [110] ("Trial Brief"). In it, Plaintiff argues that her "jury charge number 6 is an accurate statement of the law and should be given." (Tr. Br. at 17). Plaintiff's proposed jury charge number 6 is based on O.C.G.A. § 33-6-34, which provides a

list of "acts of an insurer [that] when committed as provided in [O.C.G.A. §] 33-6-33 shall constitute an unfair claims settlement practice[.]"  O.C.G.A. § 33-6-34; ([66] at 13).  In its response to the Trial Brief, Allstate argues that, because the Trial Brief touches on several issues pertinent to Allstate's Motion, the two briefs should be "read and considered together."  (Resp. [111] at 2).  The Court agrees, and considers Plaintiff's Trial Brief to the extent it addresses issues relevant to Allstate's Motion.

On June 24, 2016, Plaintiff filed her Motion.  In it, she seeks to exclude the deposition testimony of Mr. Gould, Allstate's fact witness, including because: (1) Plaintiff's Sixth Amendment right to cross examination was denied when Mr. Gould left his deposition before cross-examination was finished; (2) he did not authenticate photographs and the photographs should be excluded, and his opinions are based on inadmissible hearsay and unauthenticated documents; (3) Mr. Gould's opinions as to pre-existing carpet stains should be excluded because Allstate failed to raise this defense in its Answer or in discovery; and (4) his testimony should be excluded due to spoliation of evidence.

## II.    ALLSTATE'S MOTION[2]

Allstate argues Mr. Fredrics's testimony should be excluded because:

(1) Mr. Fredrics's contingent interest in the outcome of this case should bar his

testimony; (2) he should not be allowed to give opinions and conclusions regarding

Allstate's alleged duties under the insurance policy or coverage issues; and (3) he

should not be allowed to give opinions and conclusions regarding Allstate's

alleged bad faith claim handling.  Allstate also argues that Jeffrey Pellet, another

adjuster with United States Adjusters, should not be allowed to give expert

testimony because Plaintiff did not file a proper Rule 26 expert report for

Mr. Pellet.  The Court considers these arguments in turn.

### A.    Mr. Fredrics's Contingent Interest

Allstate contends that Mr. Fredrics's testimony should be excluded because

he had a contingent interest in the outcome of this case.  After Plaintiff's house

---

[2]     Plaintiff's argument that Allstate's motion to exclude Mr. Fredrics's
testimony is an untimely Daubert motion has been addressed by the Court on
multiple occasions.  (See March 7, 2016, Order [70] at 7 n.5; March 8, 2016, Order
[75] at 5 n.2).  As the Court previously explained, Allstate filed timely Daubert
motions to exclude Fredrics and Miller.  In the Court's May 20, 2015, Order [44]
denying summary judgment, the Court denied without prejudice Allstate's
motions, and instructed Allstate it would be allowed to re-file the motions based on
the briefing schedule for motions in limine.  In the Court's March 14th Order, the
Court specifically allowed Allstate to file motions to exclude Mr. Fredrics's
opinions, "including by filing a motion in limine or a Daubert motion."  (March
14th Order at 1).  Plaintiff's argument is without merit.

was damaged by a fire, Plaintiff made a claim with Allstate for damage allegedly caused by the fire.  On August 3, 2012, Plaintiff hired Mr. Fredrics, a public adjuster, to assist her with her insurance claim.  (See Georgia Retainer Agreement & Contract [109.2]).  Mr. Fredrics performed his professional services for Plaintiff pursuant to a retainer agreement that Plaintiff entered into with United States Adjusters, the public adjuster company that employed Mr. Fredrics.  The agreement states that United States Adjusters was "retain[ed]" "to evaluate, advise and assist in the complete adjustment" of Plaintiff's damages.  (Id.).  Plaintiff agreed to compensate United States Adjusters for the work performed by Mr. Fredrics.  Compensation was on a contingency fee basis.  Specifically, Plaintiff agreed to pay United States Adjusters fifteen percent (15%) of the amount she received from Allstate.  (Id.).  Mr. Fredrics then performed his services pursuant to a classic retainer agreement.  On January 27, 2012, Mr. Fredrics prepared an estimate in the amount of $11,731.79 to clean Plaintiff's property.  ([97.4] at 14).  On September 24, 2012, Mr. Fredrics prepared an estimate in the amount of $59,233.51 to repair the damage to Plaintiff's house.  ([97.3] at 21).

On October 8, 2012, Mr. Fredrics's contractual arrangement with Plaintiff changed from public adjuster to appraiser.  As an appraiser, Mr. Fredrics agreed to bill Plaintiff at an hourly rate of $250.00 an hour, up to the same cap of 15% of any

proceeds Plaintiff received from Allstate.  (First Fredrics Dep. [33.3] at 54-57).

The appraisal process did not go forward, (id. at 58), and, on December 10, 2012,

Mr. Fredrics returned to his role as Plaintiff's public adjuster, (id. at 60-61).  Upon

reverting to a public adjuster, Mr. Fredrics's original contract through United

States Adjusters continued to govern his contingent interest.  (See id. at 61).  In

May 2013, after preparing the estimates in this case, Mr. Fredrics ended his

employment with United States Adjusters.  (Second Fredrics Dep. [109.3] at 6).

To the best of Mr. Fredrics's knowledge, Plaintiff's contract with United States

Adjusters is still in effect, (id. at 42), and United States Adjusters is entitled to 15%

of any amount awarded to Plaintiff at trial, ([109.2]).

Plaintiff contends that Mr. Fredrics was never a party to the contract, which

was between Plaintiff and United States Adjusters, and Mr. Fredrics thus does not

have a contingent interest in the outcome of this case.  She also argues that bias of

an expert goes to weight and credibility, not admissibility.  The Court agrees.

Allstate's objection is an objection based upon the perceived bias of Mr. Fredrics's

testimony.  See Charter Oak Fire Ins. Co. v. Patterson, 46 F. Supp. 3d 1361, 1374

(N.D. Ga. 2014).  "Bias in an expert witness's testimony, unlike reliability, is a

credibility issue for the jury, and not a reason for the Court to exclude the expert's

testimony or report."  Id. (citing Adams v. Lab. Corp. of Am., 760 F.3d 1322 (11th

Cir. 2014; Cruz-Vazquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 59 (1st Cir.

2010) ("Assessing the potential bias of an expert witness, as distinguished from his

or her specialized training or knowledge or the validity of the scientific

underpinning for the expert's opinion, is a task that is properly left to the jury."

(internal quotation marks omitted))).  Allstate's Motion to exclude Mr. Fredrics's

testimony based on his contingent interest in the outcome of this case is denied.

      B.     Opinions Regarding Allstate's Duties Under the Policy

Allstate next seeks to preclude Mr. Fredrics from giving opinions regarding

coverage and Allstate's duties under the Policy.  The Court has broad discretion in

admitting or excluding expert testimony, and its ruling shall be sustained unless

manifestly erroneous.  Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962);

Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990).

Under the Federal Rules of Evidence, expert testimony is admissible if it is based

on "scientific, technical or other specialized knowledge" and it "will help the trier

of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid.

702.  The construction of a contract is a matter of law for the Court, and expert

legal opinion is not admissible under Fed. R. Evid. 702.  See Montgomery, 898

F.2d at 1541 (finding that district court abused its discretion by allowing expert to

testify about the scope of insurer's duty to defend under the insurance policy);

Plantation Pipeline Co. v. Continental Cas. Co., 1:08-CV-2811-WBH, 2008 WL 4737163, *7 (N.D. Ga. July 31, 2008) (concluding that expert opinions regarding coverage under an insurance policy are inadmissible as expert legal opinion); Nova Cas. Co. v. Waserstein, 2005 WL 5955694 (S.D. Fla. Sept. 7, 2005); S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003) (finding that expert opinion as to whether insured helicopter was being operated in violation of Federal Aviation Administration (FAA) regulations, within meaning of policy exclusion, was inadmissible, in action to recover on policy); Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc., 259 F.3d 418, 424 n.4 (6th Cir. 2001) ("[T]he construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible."); Marx & Co. v. Diners Club, Inc., 550 F.2d 505, 508-11 (2nd Cir. 1977) (holding that an expert's legal opinion on the meaning of contract terms was an invasion of court's authority to instruct the jury on the applicable law).

The use of expert testimony "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before

it." <u>United States v. Bilzerian</u>, 926 F.2d 1285, 1294 (2nd Cir. 1991) ("[A]n expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts."); <u>see also</u> <u>Specht v. Jensen</u>, 853 F.2d 805, 807-10 (10th Cir. 1988) (concluding that the expert was improperly allowed to instruct the jury on how it should decide the case).  "The question of interpretation of the contract is for the jury, and the question of legal effect is for the judge.  In neither case do we permit expert testimony." <u>Plantation Pipeline Co.</u>, 2008 WL 4737163, *7 (quoting <u>Loeb</u> <u>v. Hammond</u>, 407 F.2d 779 (7th Cir. 1969) (testimony of attorney on legal significance of documents was properly excluded)).[3]

Under Georgia law, which controls in this case, insurance is a matter of contract, and contract construction is customarily a matter of law for the Court. <u>See</u> <u>Nationwide Mut. Fire Ins. Co. v. Somers</u>, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003).  Words in an insurance policy are given their "usual and common"

---

[3]     While Federal Rule of Evidence 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue[,]" the Eleventh Circuit and courts within the Eleventh Circuit have excluded expert testimony where it is simply a reiteration or recasting of a parties' interpretation of a contract.  <u>N. Am.</u> <u>Specialty Ins. Co. v. Wells</u>, No. CV412-146, 2013 WL 4482455, at *2 (S.D. Ga. Aug. 19, 2013) (citing cases).

meaning, <u>see</u> O.C.G.A. § 13-2-2(2), and the policy "should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." <u>Doss & Assocs. v. First Am. Title Ins. Co., Inc.</u>, 754 S.E.2d 85, 94 (Ga. Ct. App. 2013) (quoting <u>State Farm Mut. Auto Ins. v. Staton</u>, 685 S.E.2d 253 (Ga. 2009)). When the plain words of a contract are susceptible to more than one meaning, an ambiguity exists. "Georgia law teaches that an ambiguity is duplicity, indistinctness, an uncertainty of meaning or expression." <u>Alea London Ltd. v. Am. Home Servs., Inc.</u>, 638 F.3d 768, 773 (11th Cir. 2011) (quoting <u>Collier v. State Farm Mut. Aut. Ins. Co.</u>, 549 S.E.2d 810, 812 (Ga. Ct. App. 2001)). To resolve an ambiguity, Georgia courts "apply the rules of contract construction." <u>Certain Underwriters at Lloyd's of London v. Rucker Constr., Inc.</u>, 648 S.E.2d 170, 174 (Ga. Ct. App. 2007). A jury question arises only if an ambiguity remains after the court applies the rules of construction. <u>Progressive Mountain Ins. Co. v. Cason</u>, 626 F. App'x 916, 918 (11th Cir. 2015) (citing <u>Travelers Ins. Co v. Blakey</u>, 342 S.E.2d 308, 309 (1986)).

Allstate identifies several proposed opinions in Mr. Fredrics's expert report that it seeks to exclude, including:

- [T]he policy provides coverage for loss to a pair or set, which essentially provides for the matching of items to properly restore the set.

- [Allstate had] to give the benefit of the doubt to the insured on the existence of smoke damage.

- If the entire carpet is damaged by smoke, a covered peril under the policy, then Allstate is required to indemnify Ms. Armstead and replace her entire carpet.

- Allstate also should have cleaned the contents and fixtures of every room to ensure the property was restored to its pre-loss condition to create full indemnity as promised by the insurance policy.

- Any pre-existing marring or wear and tear in the form of spots on the upper level carpet, does not preclude coverage for replacement of all of the carpet if the majority of the carpet was damaged by smoke.  The rule of efficient proximate cause requires replacement if the dominant cause of damage is covered under the policy.

([97] ¶¶ 107, 127, 129, 130, 133(b)).

Plaintiff argues that "[i]nherent to the job of preparing an appraisal and/or the job of 'adjusting' is reviewing the policy of insurance to see what is covered." ([112] at 23).  She argues that "[o]ne cannot know what to put in the appraisal estimate if one does not know what is covered under the policy."  (Id.).  Plaintiff contends that it is often necessary for an expert to supply industry context to undefined terms in a policy, and that Mr. Fredrics seeks to do so with his opinions. (Id. at 23).

The Court finds that there is no ambiguity in the Policy and that Mr. Fredrics's expert opinions are not required for the Court to determine whether ambiguity exists.  See Travelers Indemnity Co. v. Scor Reinsurance Co., 62 F.3d

74, 78 (2d Cir. 1995) (although extrinsic evidence of custom and practice in the reinsurance industry may be used to interpret the meaning of ambiguous provisions, such evidence may not be used to alter the meaning of the contract). "Absent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible." TCP Indus., Inc. v. Uniroyal, Inc., 661 F.2d 542, 549 (6th Cir. 1981); see also Maffei v. N. Ins. Co. of New York, 12 F.3d 892, 898-99 (9th Cir. 1993) (affirming trial court's exclusion of expert declaration that interpreted meaning of policy endorsement rather than opined on "custom and usage" in the industry); United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1992) (explaining that the fundamental inquiry for admitting expert testimony is whether specialized knowledge is required of the jury).[4]  Rather, the Court will assess the natural or plain meaning of the policy language to determine whether any ambiguity exists.  The question of what the contract provisions mean is for the Court to determine.  Coyote Portable Storage,

---

[4]     Plaintiff argues there are several ambiguous terms in the Policy, including, for instance, "pair or set," "smoke damage," and "debris removal." ([112] at 24). She argues that "[c]ustom and usage in the industry could supply meaning to these and other terms and how coverage determinations are made." (Id.).  First, the Court does not find these terms so technical or complex as to require specialized knowledge from an expert.  See Shay, 57 F.3d at 132.  Second, Mr. Fredrics's expert report does not indicate that he opines on custom and usage of terms in the industry.  He opines, instead, on his interpretation of the Policy's coverage provisions.

LLC v. PODS Enterprises, Inc., No. 1:09-CV-1152-AT, 2011 WL 1870593, at *4

(N.D. Ga. May 16, 2011) (citing Plantation Pipeline, 2008 WL 4737163, at *7).

The admission of the testimony Plaintiff seeks to offer from Mr. Fredrics regarding

the interpretation of the Policy would give the appearance that the Court was

shifting to the expert the responsibility to decide coverage issues at the center of

this action.  Id. (citing Marx, 550 F.2d at 510).  Allstate's Motion to exclude

Mr. Fredrics's opinions and conclusions regarding Allstate's alleged duties or

coverage under the Policy is granted.

     C.    Opinions Regarding Allstate's Alleged Bad Faith Claim Handling

     Allstate next moves to exclude Mr. Fredrics's opinions and conclusions

regarding Allstate's alleged bad faith handling of Plaintiff's claim, including his

opinions regarding Allstate's non-compliance with the Georgia Unfair Claims

Settlement Practices Act, O.C.G.A. §§ 33-6-30, et seq. ("UCSPA").[5]  Plaintiff

argues that, because "bad faith" is "undefined in the bad faith statute"—O.C.G.A.

§ 33-4-6—"this Court should allow evidence of standards, regulations, common

---

[5]    Plaintiff, in both her response to Allstate's Motion *in Limine* and in her Trial Brief, argues that "bad faith" is an ambiguous contract term, and that industry standards, regulations, and customs—established by expert testimony—are thus appropriate to consider.  A review of the Policy, ([28.3], [28.4]), does not show that "bad faith" is a term in the Policy, and the case law discussed above regarding ambiguous contract terms does not apply here.

law, and customs to give context to the meaning of bad faith . . . ."  ([113] at 1).
The only standard, regulation, or custom Plaintiff identifies is the UCSPA.
Plaintiff seeks to have Mr. Fredrics testify that Allstate did not comply with certain
provisions of the UCSPA and, therefore, has acted in bad faith within the meaning
of O.C.G.A. § 33-4-6, which provides for damages and attorneys' fees for an
insurer's bad faith refusal to pay claims.

> 1. UCSPA as Evidence of Bad Faith

Under the UCSPA, insurance companies are prohibited from engaging in
certain activities when settling claims with their insureds.  See O.C.G.A.
§ 33-6-34.  The UCSPA provides that "nothing contained in this article shall be
construed to create or imply a private cause of action for a violation of this article."
O.C.G.A. § 33-6-37.

Plaintiff's original Complaint included claims against Allstate for violations
of the UCSPA.  ([1.1] ¶¶ 127-137).  On July 18, 2014, the parties submitted a
consent order [23] dismissing various claims including Plaintiff's UCSPA claims.
On July 18, 2014, the Court entered the consent order [24], and Plaintiff's UCSPA
claims were dismissed.  Plaintiff now seeks to use the UCSPA's provisions as
evidence of bad faith under O.C.G.A. § 33-4-6.  Plaintiff does not cite any binding
authority that the UCSPA may be used in such a manner.  To the contrary, the

plain language of the statute states that the UCSPA does not create or imply a

private cause of action for a violation of the UCSPA.  As the Court in

Thercy v. Allstate Property & Cas. Ins. Co. explained, the UCSPA "vests authority

with the Commissioner of Insurance to enforce the provisions of § 33-6-33, and

[thus] there is no private cause of action for a violation of the statutes."

No. 1:13-cv-1099-RWS, Doc. 18 at 11 (N.D. Ga. Aug. 29, 2013).

In Javits v. State Farm Fire and Cas. Co., plaintiff argued that a separate

statute, O.C.G.A. § 51-1-6, provides a mechanism to assert a claim for violation of

the UCSPA.  No. 1:13-CV-487-WSD, 2014 WL 4230069, at *13 (N.D. Ga. Aug.

26, 2014).  In Javits, the Court found that, "because causes of action—breach of

contract and statutory bad faith—already exist to remedy the violations alleged,

and, considering the unambiguous language of Section 33-6-37—that '[n]othing in

this article shall be construed to create or imply a private cause of action for

violation of [the UCSPA]'—the Court declines to create one here."  Id.  Similarly,

here, Plaintiff asserts breach of contract and statutory bad faith claims, and the

Court will not allow Plaintiff to revive her dismissed UCSPA claim through this

interpretation manipulation.  As the Court explained in Thercy, "the specific acts

enumerated in the statute that constitute unfair claims settlement practices are

breach of contract issues which would be governed by the parties' insurance

policy." No. 1:13-cv-1099-RWS, Doc. 18 at 11.[6]  As explained above, the

interpretation of terms in the Policy is not the proper role of an expert.  Plaintiff

attempts to distinguish Javits and Thercy, arguing that, in those cases, the Court

considered the validity of a claim for liability for violating the UCSPA, whereas,

here, she seeks to admit evidence of violations of the UCSPA to show that

Allstate's conduct was in bad faith.  (See [113] at 15-16).  The distinction is

unconvincing, because Plaintiff attempts, in essence, to shoehorn a UCSPA cause

of action into her bad faith claim.

Further, the UCSPA is not the proper standard for judging a bad faith claim

under O.C.G.A. § 33-4-6:

> To support a cause of action under O.C.G.A. § 33-4-6, the insured
> bears the burden of proving that the refusal to pay the claim was made
> in bad faith. . . .  Penalties for bad faith are not authorized where the
> insurance company has any reasonable ground to contest the claim
> and where there is a disputed question of fact.

---

[6]      Plaintiff argues at length that statutory and regulatory standards may be used
by experts in negligence cases to determine whether a defendant complied with a
particular standard of care.  As the Court explained in its Order granting Allstate's
Motion to Dismiss Plaintiff's negligence claims, "Plaintiff's negligence claims are
based on the manner in which Allstate processed Plaintiff's claim for coverage
under the Policy.  Allstate's alleged duty to Plaintiff arises, if at all, under the
Policy and can only support a claim for breach of contract."  (December 3, 2014,
Order [39] at 23).  Plaintiff cannot use the UCSPA to establish a standard of care,
because this is a negligence concept inapplicable to the breach of contract and bad
faith claims at issue in this case.

R&G Invs. & Holdings, LLC v. Am. Family Ins. Co., ⸺ S.E.2d ⸺, 2016 WL 3208875, at *8 (Ga. Ct. App. June 9, 2016) (quoting Assurance Co. of Am. v. BBB Svc. Co., 576 S.E.2d 38, 41 (Ga. Ct. App. 2002)).  "Bad faith is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment."  Id. (quoting Atl. Title Ins. Co. v. Aegis Funding Corp., 651 S.E.2d 507, 508 (Ga. Ct. App. 2007)).  "The question whether the insurer acted in good or bad faith is normally for the jury."  Id.  Under this standard, while certain provisions of the UCSPA may go to whether Allstate had cause for resisting and delaying payment,[7] the mere fact that Allstate did or did not comply with the UCSPA is not relevant.[8]  The Court also finds that referencing

---

[7]    E.g., O.C.G.A. § 33-6-34(6) ("Refusing to pay claims without conducting a reasonable investigation.").

[8]    Plaintiff also offers extensive argument regarding Georgia courts' "evisceration of the bad faith statute . . . ."  ([113] at 6).  She asks the Court to "depart[] from a piece meal [sic] judiciary finding of bad faith, and instead follow[] the rules of statutory construction which allow the jury to consider extrinsic evidence of the meaning of bad faith as provided by industry customs, regulations, statutory and common law . . . ."  (Id.).  It is not in the Court's power to "depart[]" from Georgia state courts' interpretations of Georgia law.  See United States v. Howard, 742 F.3d 1334, 1346 (11th Cir. 2014) (federal courts "are bound to follow any state court decisions that define or interpret the [state] statute's substantive elements"); Zaccone v. Ford Motor Co., No. 2:15-CV-287-FTM-38CM, 2016 WL 705964, at *1 (M.D. Fla. Feb. 23, 2016) ("It is axiomatic that a

alleged violations of the UCSPA would be more prejudicial than probative.  <u>See</u>

Fed. R. Evid. 403.  Allstate's Motion is granted, and Plaintiff is precluded from

offering evidence that Allstate did not comply with the UCSPA.[9, 10]

---

federal district court must apply state substantive law when interpreting a state statute that is at issue.").

[9]     Plaintiff relies on several cases from other states to support that an expert may show violations of a state unfair claims act to show insurance industry practices in support of a bad faith claim.  ([110] at 8-9).  The Court notes that these cases are not binding on this Court.  The majority of cases Plaintiff relies on also do not apply here for several reasons.  First, many of the cases involve negligence claims.  <u>See, e.g.</u>, <u>Spray, Gould & Bowers v. Assoc. Int'l Ins. Co.</u>, 84 Cal. Rptr. 552 (Cal. App. 1999).  It is well-established that regulations can, under certain circumstances, provide a standard of care in negligence actions.  That is not the case here.  Second, many cases are from states with standards for bad faith insurance claims different than Georgia's standard.  Third, many cases Plaintiff cites allowed a state unfair claims act to be used to support a cause of action, such as fraud, where state of mind is at issue.  <u>See, e.g.</u>, <u>Walston v. Monumental Life Ins. Co.</u>, 985 P.2d 674, 683 (Idaho 1999) ("[E]vidence of an extreme deviation from customary practices is relevant to the state of mind that is necessary to establish fraud.").  That is not the case here.

     Plaintiff also relies on <u>State Farm Mut. Auto Ins. Co. v. Weiford</u>, 831 P.2d 1264 (Alaska 1992).  In <u>Weiford</u>, the Alaska Supreme Court held that the trial court did not err when it gave an instruction derived from Alaska's unfair claim settlement practices statute.  <u>Id.</u> at 1269.  The court found that the instruction "merely informed the jury as to two types of conduct which could be considered evidence of bad faith" under Alaska's standard for bad faith.  <u>Id.</u>  The Court's ruling here is consistent with this opinion.

[10]     For these same reasons, Plaintiff's proposed jury charge number 6—which recites the UCSPA in its entirety—is inappropriate as written.

2.    Mr. Fredrics's Opinions and Conclusions Regarding Allstate's
Alleged Bad Faith Handling of Plaintiff's Claim

Allstate also seeks to exclude several other of Mr. Fredrics's opinions

regarding Allstate's bad faith claim handling:

- Allstate's refusal fell below the standard of care, and was in bad faith.

- Allstate failed to properly document the claim file.

- The Allstate adjuster did not take enough photographs.

- The standard in the industry is to give the benefit of the doubt to the homeowner.

- The standard in the industry is that claims representatives must attempt independently to verify and compare pre-loss conditions with other available sources.

- Allstate's goal was to establish no coverage, rather than to look for reasons to cover loss.  This is not good faith on the part of Allstate.

- Allstate was required to explain the policy and its meaning in relation to the loss.  Plaintiff informed Mr. Fredrics that Allstate failed to do so.

- The standard of care in the industry is to return phone calls, provide explanations and be available for questions.  Allstate did not meet the standard of care in the industry for communicating with the insured.

- Allstate was required to negotiate with Plaintiff.

- Allstate was required to participate in appraisal.   Plaintiff informed Mr. Fredrics she "heard nothing in writing from Allstate for 10 months after she submitted estimates for repairs . . . ."

([97] ¶¶ 102, 108-110, 118, 122, 123, 124, 137, 143-44, 154, 159, 184).

Plaintiff concedes that paragraphs 102 and 208 in Mr. Fredrics's expert disclosure are legal conclusions, and she "agrees that Mr. Fredrics cannot opine that Allstate violated a particular law." ([112] at 21).[11]  She argues, however, that "testimony opining on standards and customs in the industry and making reference to laws that supply standards and customs and whether Allstate's conduct fell below the standard of care is admissible, including testimony that Allstate acted in bad faith . . . ."  (Id. (quotations omitted)).

As stated above, "[b]ad faith is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment."  R&G Invs., 2016 WL 3208875, at *8 (quoting Aegis Funding Corp., 651 S.E.2d at 508).  Under the Federal Rules of Evidence, expert testimony is admissible if it is based on "scientific, technical or other specialized knowledge."  Fed. R. Evid. 702.  Rule 702 further requires that an expert opinion, to be admissible, must be helpful to the jury "to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  The opinions Plaintiff seeks to offer from

---

[11]    Paragraph 102 includes the legal conclusion that "Allstate's refusal fell below the standard of care, and was in bad faith."  ([97] ¶ 102).  Paragraph 208 states Allstate's contractors engaged in "fraudulent misrepresentation" in "bad faith."  ([97] ¶ 208).

Mr. Fredrics, which in many cases are sweeping conclusions, are in some ways helpful and in other ways supplant what the jury is competent to decide.  The Court finds it would be helpful for the jury to know the customs and standards that apply in the industry regarding activities in the adjusting of claims.  See Crowley v. Chait, 322 F. Supp. 2d 530, 550 (D. N.J. 2004) ("While it is impermissible for a witness to testify as to the governing law since it is the [C]ourt's duty to explain the law to the jury . . . expert testimony concerning business customs and practices [is allowed].").  It thus would be helpful for Mr. Fredrics to offer the following testimony:

- The materials that should appear in a claim file for fire damage;

- What is required to verify pre-loss conditions to a home before a fire;

- What should be communicated to an insured about the claimant's policy and what it covers;

- The practices for communicating with an insured about adjustment of a claim, including the manner of communicating with an insured;

- The manner for negotiating a settlement with an insured; and

- The time required to conduct an appraisal and to communicate the results to an insured.

This is the specific testimony Mr. Fredrics may offer.  It is the province of the jury to then evaluate the facts of Allstate's adjusting conduct in light of these industry customs and standards.  The jury will be competent to determine if the industry

standards Mr. Fredrics claims applies were or were not violated, in whole or in part, and, if they were, whether Allstate acted in bad faith by resisting or delaying payment.  See R&G Invs., 2016 WL 3208875, at *8.  The Court notes that "[c]ounsel on both sides are free to object at trial where they believe a witness's testimony has strayed out of bounds and into the rightful territory of the Court" or the jury.  Crowley v. Chait, 322 F. Supp. 2d at 550.[12]  The Court grants in part and denies in part Allstate's Motion to exclude Mr. Fredrics's opinions.  The opinions allowed are described specifically above.

 D.  Mr. Pellet's Testimony

 Allstate next argues that Jeffrey Pellet, another adjuster with United States Adjusters, should not be allowed to give expert testimony because Plaintiff did not file a proper Rule 26 expert report for Mr. Pellet.  As stated in the Court's March 7, 2016, Order [70] on the parties' original motions in limine, Federal Rule of Civil Procedure 26(a)(2)(B) requires that expert witnesses must provide a written report, prepared and signed by the witness, "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."  Fed. R. Civ.

---

[12]   Allstate also may raise any appropriate objections on the basis of relevance, or on other grounds, at trial.

P. 26(a)(2)(B).  A party must make these disclosures at the time and in the sequence that the Court orders.  Id. at (a)(2)(D).  Federal Rule of Civil Procedure 37(c) provides that when a party fails to provide information as required by Rule 26(a), the party is not allowed to use that information or that witness to supply evidence at trial, unless the failure was substantially justified or was harmless.  Fed. R. Civ. P. 37(c)(1).[13]  The burden of establishing that a failure to disclose was substantially justified or is harmless rests on the non-disclosing party.  Mitchell v. Ford Motor Co., 318 F. App'x 821, 825 (11th Cir. 2009).

Plaintiff does not contest that Mr. Pellet did not provide a written report.  She argues only that Allstate has waived any objections to Mr. Pellet's testimony because it never filed a Daubert challenge to his testimony.  Allstate's challenge here is not a challenge based upon Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).  Mr. Pellet was required to provide a written report.  He failed to do so.  Plaintiff fails to show that this failure was substantially justified or is harmless.

---

[13]     The Court's Local Rules provide that a "party who desires to use the testimony of an expert witness *shall* designate the expert sufficiently early in the discovery period . . . ."  L.R. 26.2(C), NDGa (emphasis added).  The Rules further provide that a "party who does not comply with the provisions of the foregoing paragraph shall not be permitted to offer the testimony of the party's expert, unless expressly authorized by court order based upon a showing that the failure to comply was justified."  Id.

See Fed. R. Civ. P. 37(c)(1); L.R. 26.2(C), NDGa. Allstate's motion to exclude Mr. Pellet's testimony is granted.

## III. PLAINTIFF'S MOTION

Plaintiff seeks to exclude the deposition testimony of Mr. Gould, Allstate's fact witness, including because: (1) Plaintiff's Sixth Amendment right to cross examination was denied when Mr. Gould left his deposition before cross-examination was finished; (2) he did not authenticate photographs and the photographs should be excluded, and his opinions are based on inadmissible hearsay and unauthenticated documents; (3) Mr. Gould's opinions as to pre-existing carpet stains should be excluded because Allstate failed to raise this defense in its Answer or in discovery; and (4) his testimony should be excluded due to spoliation of evidence.

### A. Confrontation Clause

Plaintiff contends that her Sixth Amendment Confrontation Clause "right to cross-examine witnesses" was denied when Mr. Gould left his deposition before cross-examination was completed. (Pl.'s Mot. at 4). The Sixth Amendment has provided, since December 15, 1791, when it was ratified, that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. XI. "[T]he Confrontation Clause

is not applicable to civil cases." U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1287 n.13 (11th Cir. 2001).  Plaintiff's Motion based on the Sixth Amendment is denied.

B.      Authentication and Hearsay

Plaintiff next argues that certain documents should be excluded because Mr. Gould has not provided testimony to authenticate them and they are otherwise hearsay.  Mr. Gould is an employee of Steamatic, a company that performed remediation work on Plaintiff's home after the fire.  The photographs in question are of Plaintiff's carpet, and Plaintiff claims Allstate seeks to introduce them to show Plaintiff's carpet had pre-existing stains.  Plaintiff argues that Mr. Gould "has provided no testimony that the photos accurately depict the scenes when taken, nor could he because he has never been to Ms. Armstead's home."  (Pl.'s Mot. at 10).  Allstate argues that Steamatic's files are admissible under the hearsay exception for records of a regularly conducted activity.

Federal Rule of Evidence 803(6) provides that records of a regularly conducted activity are an exception to hearsay.  It provides an exception for:

A record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

26

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).  Under this exception, "[i]t is not necessary for the person who actually prepared the documents to testify so long as there is other circumstantial evidence and testimony to suggest the trustworthiness of the documents."  Equity Lifestyle Properties, Inc. v. Fla. Mowing and Landscaping Serv., Inc., 556 F.3d 1232, 1243 (11th Cir. 2009).  Further, "it is not essential that the offering witness be the recorder or even be certain of who recorded the item.  It is sufficient that the witness be able to identify the record as authentic and specify that it was made and preserved in the regular course of business."  United States v.Langford, 647 F.3d 1309, 1327 (11th Cir. 2011).

Here, Mr. Gould testified that the documents in Steamatic's file are documents ordinarily prepared and regularly utilized in the ordinary course of Steamatic's business, that as the owner of the company it is his role to keep those business records, and that they related to Plaintiff's claim.  (Gould Dep. at 13-15,

17-18, 24-25, 27, 29, 33, 35-36, 36).  Allstate also argues that, prior to playing the video deposition of Mr. Gould, Plaintiff is expected to have identified several of the documents in dispute.  ([115] at 8).  "[T]he touchstone of admissibility under the business records exception to the hearsay rule is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence."  Langford, 647 F.3d at 1327.  The Court finds, based on the record presented, that the photographs and documents are sufficiently reliable, and Plaintiff's Motion on the grounds of hearsay and insufficient authentication of documents is denied.[14]

C.    Affirmative Defense

Plaintiff next seeks to exclude Mr. Gould's opinions as to pre-existing carpet stains because Allstate failed to raise this affirmative defense in its Answer or in discovery.  The Federal Rules of Civil Procedure require a defendant to "state in short and plain terms its defenses to each claim asserted against it."  Fed. R. Civ. P. 8(b)(1)(A).  The rules provide that, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."  Fed. R. Civ. P. 8(c)(1).  A party's failure to raise an affirmative defense in the pleadings typically results in a waiver of that defense.  Proctor v. Fluor Enters., Inc., 494 F.3d 1337, 1350 n.9

---

[14]    Plaintiff may raise appropriate objections to the introduction of specific evidence at trial.

(11th Cir. 2007).  However, "[w]hen a plaintiff has notice that an affirmative defense will be raised at trial, the failure of the defendant to plead the affirmative defense does not prejudice the plaintiff[.]"  Hewitt v. Mobile Research Tech., Inc., 285 F. App'x 694, 696 (11th Cir. 2008) (citing Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988)).

Plaintiff argues that the defense of "pre-existing stains" has "never been mentioned in one letter to Plaintiff in the claims handling process or at any time during discovery, [and] should be excluded on the basis of unfair surprise."  (Pl.'s Mot. at 15).  Plaintiff's representations are, to put it generously, misleading. Allstate provides ample evidence that there has been no unfair surprise to Plaintiff. Allstate shows that one of the emails with the photographs of the preexisting carpet stains was "forwarded to Plaintiff's own contractor, Aubrey Brown, on February 22, 2012."  ([115] at 19).  Allstate shows that the email chain with the photographs of the carpet stains was produced in discovery, and that similar photographs, one with a notation "heavy traffic—not soot," were produced in discovery.  In the original pretrial order filed in this case on October 19, 2015, Plaintiff's own witness list states that Steamatic is expected to have "knowledge of stains left on Plaintiff's carpet and complaints made by Plaintiff of poor cleaning and destruction of carpet."  ([46] at 68).  Plaintiff later filed an amendment to the pretrial order

[58] adding witness Hugh Clark, who was to testify that "the carpet did not have damage prior to the fire." ([58] at 10).  Given this evidence, the Court finds that plaintiff has had notice of the pre-existing stains defense for over three years, and she prepared her proposed pretrial order aware of this defense.  Thus, Allstate's failure to plead the defense did not prejudice Plaintiff.  See Hassan, 842 F.2d at 263.  Plaintiff's Motion on the basis of Allstate's failure to plead pre-existing stains as a defense is denied.

    D.    <u>Spoliation of Evidence</u>

    Plaintiff next seeks to exclude Mr. Gould's testimony due to spoliation of evidence.  The Eleventh Circuit has "long acknowledged the broad discretion of the district court to impose sanctions."  <u>Flury v. Daimler Chrysler Corp.</u>, 427 F.3d 939, 944 (11th Cir. 2005).  Sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process.  <u>Id.</u>

    Plaintiff argues that Mr. Gould was "commanded by subpoena to bring the photos in their original digital format to the deposition."  (Pl.'s Mot. at 20). "Mr. Gould did not produce the digital formats as requested."  (<u>Id.</u>).  "Moreover, he has testified that the digital formats have been destroyed or lost."  (<u>Id.</u>). Plaintiff argues that, because the evidence has been destroyed or lost, it should be excluded and, if it is not excluded, the Court should give a spoliation charge.  (<u>Id.</u>).

Allstate argues that the photographs in Steamatic's possession related to Plaintiff's claim were printed out in color and produced to Plaintiff in discovery. ([115] at 21).  Some of the photographs at issue were emailed in digital format to Plaintiff's contractor, Aubrey Brown, as early as February 22, 2012.  (Id.).  Mr. Gould testified he lost all original media from 2011 and before when Steamtic's server crashed.  (Id.).[15]  Because he does not have the original media, Mr. Gould did not bring digital media to his deposition, but he printed color copies of the photographs.  He explained that, while he does not have access to the original documents, he has access to copies of the photographs through a program called Xactimate.  (Id.).  Mr. Gould offered to produce any digital media he might have on his hard drive at his office on a later date.  (Id.).  Plaintiff's counsel did not accept his offer, stating "Today is it, dude."  (Id.).  The Court finds there has been no spoliation of evidence here,  and Plaintiff's Motion on the basis of spoliation is denied.[16]

---

[15]     Though the deposition testimony is unclear, it appears that Steamatic's server may have crashed before Mr. Gould received the subpoena to testify in this action on February 29, 2016.  ([114.1]).

[16]     Plaintiff, in passing, argues that Mr. Gould's opinions are expert opinions and should be excluded because Allstate did not disclose Mr. Gould pursuant to Rule 26 of the Federal Rules of Civil Procedure.  (Pl.'s Mot. at 24).  Plaintiff does not identify any opinions of Mr. Gould's that are expert opinions, and her Motion

## IV.   PLAINTIFF'S COUNSEL'S CONDUCT

Allstate submitted in its response to Plaintiff's Motion an affidavit of Mr. Gould relating facts regarding Sandra Finch, Plaintiff's attorney.  ([114.1]).  The facts contained in Mr. Gould's affidavit are highly troubling.  Mr. Gould states that he believes "Plaintiff's counsel entered areas of [his] office building without permission and took many photographs without permission . . . ."  (Gould Aff. [115.1] ¶ 13).  During Mr. Gould's deposition, Ms. Finch handed him a document titled "Steamatic Guide to Restoration Services," which had been photographed page-by-page.  (Id. ¶ 5).  The photographs contained Ms. Finch's letterhead.  (Id.).  Mr. Gould states that it "became apparent to [him] Plaintiff's counsel had obtained the document from [his] office without [his] permission."  (Id. ¶ 6).  After he accused Ms. Finch of trespassing, Ms. Finch stated "I caution you on defaming me, because if you defame me, I can promise you it will not be good."  (Id. ¶ 9).  Mr. Gould felt this was a threat.  (Id.).  At the deposition, Ms. Finch stated that, in order for trespassing to occur, "you have to have told somebody they can't come on your property . . . ."  (Id. ¶ 8).

---

is denied.  If, at trial, Plaintiff raises an appropriate objection on this basis, the Court will rule on it at that time.

After the deposition, Mr. Gould went to his office and confirmed the location of the Steamatic Guide, which was located on a bookshelf in his project manager's office.  (Id. ¶ 11).  He questioned his office manager, Leonor Alarez, who told him:

> On May 20, 2016, she heard some noise in the office and asked if anyone was there.  There was no response.  So, Ms. Alarez continued working.  Approximately 30 minutes later, Ms. Alarez was walking to the copier and came upon Plaintiff's counsel sitting in the reception area.  Ms. Alarez asked Plaintiff's counsel how long she had been there, but she never received an answer.  At which point, Plaintiff's counsel hand delivered the subpoena.

(Id. ¶ 12).  It is Mr. Gould's opinion and belief "that Plaintiff's counsel entered areas of [his] office building without permission and took many photographs without permission . . . ."  (Id. ¶ 13).

Ms. Finch submitted her own affidavit with her reply brief.  ([116.1]).  In it, she states:

> On May 16, 2016 . . . I drove to the offices of Steamatic of Greater Atlanta.  When I arrived at Steamatic offices there were no signs not to enter, and it appeared that the business was a business open to the public.  I took a photo of the business door as it appeared that day.  The doors were not locked and there were no signs of "no trespass."  I opened the door and entered. . . .  No one came to greet me.  I waited for several minutes and still no one greeted me.  I was in a hurry to get to my deposition [for an unrelated case].  I heard a voice speaking in a British accent coming from the hall way [sic].  I had previously spoken to Mr. Gould on the phone and recognized the voice to be Mr. Gould's.  I proceeded into the hallway to look for the source of the voice.  There was no door leading from the reception area to the

> hallway. . . .  When I entered the hallway, I saw a man on the
> telephone in the office to the left.  The man stated to the person whom
> he was on the phone with "I am about to be served" and then ended
> his phone conversation. . . . The man identified himself as Mr.
> Gould. . . .  I identified myself and explained why I was there.

(Finch Aff. ¶ 4 (citations omitted)).  Regarding the photographs of Mr. Gould's

office, Ms. Finch explains:

> Through attorney work product and privileged investigation, I
> previously obtained a photo of multiple certifications, including
> IICRC certifications, hanging on the wall in the hallway where Mr.
> Gould's office is located.  While standing in the hallway in front of
> Mr. Gould's office, I observed the numerous framed IICRC
> certifications hanging on the wall as depicted in the photo.  The
> framed certifications were obviously being displayed for potential
> customers to view in an effort to convince customers of the
> company's competency for hire.

(Id. ¶ 6 (citations omitted)).  Regarding the Steamatic Guide, Plaintiff explains:  "I

have litigated many cases involving franchises with different owners and have

numerous sources for P202 'Steamatic Guide to Restoration Services' shown to

Mr. Gould to include data banks, other lawyers, other Steamatic franchises, etc."

(Id. ¶ 9).

The Court finds Ms. Finch's explanations insufficient and evasive.

Accordingly, Ms. Finch is required to file, on or before July 5, 2016, a sworn

affidavit stating, in detail, how and under what circumstances she obtained the

photographs of Mr. Gould's office and the Steamatic Guide in question, including

when the photographs were obtained, who took them, where they were taken, to whom they were distributed, whether the Steamatic Guide photographs had Ms. Finch's letterhead and, if so, how did the letterhead appear on them, and whether Ms. Finch was involved in or knew of the circumstances regarding the creation of the photographs.

## V.     CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Allstate's Renewed Motion *in Limine* to Exclude the Opinion Testimony of Bruce Fredrics [109] is **GRANTED IN PART** and **DENIED IN PART**.  Defendant's Motion is **GRANTED**, and Mr. Fredrics is precluded from offering opinions and conclusions regarding Allstate's alleged duties or coverage under the Policy.  Mr. Fredrics also is precluded from offering opinions and conclusions that Allstate did not comply with the UCSPA.  Jeffrey Pellet is precluded from offering expert opinion testimony. Defendant's Motion is **DENIED** on the basis of Mr. Fredrics's alleged contingent interest in the outcome of this case.  Defendant's Motion is **DENIED IN PART** and **GRANTED IN PART** as to Mr. Fredrics's opinions regarding Allstate's alleged bad faith handling of Plaintiff's claim.  The specific opinions allowed are as follow:

- The materials that should appear in a claim file for fire damage;

- What is required to verify pre-loss conditions to a home before a fire;

- What should be communicated to an insured about the claimant's policy and what it covers;

- The practices for communicating with an insured about adjustment of a claim, including the manner of communicating with an insured;

- The manner for negotiating a settlement with an insured; and

- The time required to conduct an appraisal and to communicate the results to an insured.

**IT IS FURTHER ORDERED** that Plaintiff's "Second Motion *in Limine* to Exclude and/or Motion to Strike All Deposition Testimony of Mark Gould and to Exclude Hearsay Documents Not Properly Authenticated and/or Where Proper Foundation Has Not Been Laid" [114] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's counsel is required to file, on or before July 5, 2016, a sworn affidavit containing the information required by this Order.

**SO ORDERED** this 1st day of July, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE