## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ELAINE ARMSTEAD,

        Plaintiff,

v.

ALLSTATE PROPERTY &
CASUALTY INSURANCE
COMPANY,

        Defendant.

1:14-cv-586-WSD

## OPINION AND ORDER

This matter is before the Court on Attorney Sandra Finch's ("Respondent") Memorandum of Law in Response to the Court's Order to Show Cause for Contempt [158] ("Contempt Memo").

## I.   BACKGROUND

On June 28, 2016, Defendant Allstate Property & Casualty Insurance ("Defendant") provided an affidavit, in which Defendant's witness Mark Gould states that he believes Respondent "entered areas of [his] office building without permission and took many photographs without permission . . . ." (Gould Aff. [115.1] ¶ 13). The affidavit further provides that, during Mr. Gould's deposition, Respondent handed him a document titled "Steamatic Guide to Restoration

Services," which had been photographed page-by-page. (Id. ¶ 5). The photographs also showed Respondent's letterhead in the background. (Id.). Mr. Gould testified that it "became apparent to [him] Plaintiff's counsel had obtained the document from [his] office without [his] permission." (Id. ¶ 6). After he accused Respondent of trespassing in his office, Respondent stated, "I caution you on defaming me, because if you defame me, I can promise you it will not be good." (Id. ¶ 9). Mr. Gould considered this a threat. (Id.). At the deposition, Respondent stated that, in order for trespassing to occur, "you have to have told somebody they can't come on your property . . . ." (Id. ¶ 8).

After the deposition, Mr. Gould went to his office and confirmed the location of the Steamatic Guide, which was on a bookshelf in his project manager's office. (Id. ¶ 11). Mr. Gould's office manager, Leonor Alarez, later told him:

> On May 20, 2016, she heard some noise in the office and asked if anyone was there. There was no response. So, Ms. Alarez continued working. Approximately 30 minutes later, Ms. Alarez was walking to the copier and came upon Plaintiff's counsel sitting in the reception area. Ms. Alarez asked Plaintiff's counsel how long she had been there, but she never received an answer. At which point, Plaintiff's counsel hand delivered the subpoena.

(Id. ¶ 12). It is Mr. Gould's opinion and belief "that Plaintiff's counsel entered areas of [his] office building without permission and took many photographs without permission . . . ." (Id. ¶ 13).

Respondent, in a sworn affidavit filed with the Court [116.1], denied these accusations. The Court found Respondent's explanations insufficient and evasive. In light of Mr. Gould's affidavit, and because Respondent sought to admit into evidence at trial the Steamatic Guide and a photograph depicting certifications that were displayed in a hallway away from the public reception areas of Mr. Gould's office, on July 1, 2016, the Court entered an Order [121] ("July 1st Order") requiring Respondent to provide, on or before July 5, 2016, an affidavit stating, in detail, how and under what circumstances she obtained the photographs of Mr. Gould's office and the Steamatic Guide so the Court could consider if these proposed exhibits would be allowed into evidence at trial.

On July 5, 2016, Respondent filed her Objections to Court Order to Produce an Affidavit [122] ("Objections"). After considering Respondent's Objections, on July 6, 2016, the Court entered an Order [127] ("July 6th Order") overruling them and requiring her to file the affidavit on or before 5:00 p.m. EST on July 6, 2016. Respondent failed to file the required affidavit by the time ordered, and otherwise failed to respond to the July 6th Order, or explain why she could not or did not

comply.  During the pretrial conference held on July 7, 2016, the Court reiterated that Respondent was under a Court order to provide the required affidavit, and explained to her the information required in the affidavit was to determine its impact on evidence that Respondent stated she intended to offer at trial.  The Court offered to allow Respondent to file the affidavit later that day.  Respondent again failed to file the required affidavit or explain why she would not or could not comply.

On July 7, 2016, the Court entered an order requiring Respondent to show cause [136] ("Show Cause Order") why the Court should not hold her in contempt of the Court's July 1st Order and July 6th Order.  On July 11, 2016, the Court held a hearing on the Show Cause Order.  During the hearing, Respondent requested, and the Court allowed, that the hearing be continued so that she could be represented by counsel.  (See Tr. [147] at 17-18).  Respondent also suggested, for the first time, that she should not be required to file the required affidavit based on her Fifth Amendment right against self-incrimination.  On August 17, 2016, the Court entered an order [152] clarifying that "it has not found [Respondent] in contempt, because [Respondent] advised the Court she needed more time to prepare and wanted to be represented at the hearing."

On August 22, 2016, the Court held a pre-hearing status conference with Respondent's attorney.  At the hearing, Respondent's attorney indicated his position that, should the Court conduct contempt proceedings, the proceedings are required to be criminal in nature and comply with the requirements of Fed. R. Crim. P. 42.  The same day, the Court issued an order [155] requiring Respondent to file, on or before September 14, 2016, her legal authority and argument regarding her opinion as to the nature of the hearing and the procedural requirements to conduct it.  The Court continued the contempt hearing scheduled for August 23, 2016.

On September 19, 2016, Respondent filed the memorandum the Court ordered her to submit.  Respondent argues that, the principal case having been dismissed, there is no possibility of civil contempt, and, where the sole purpose of a sanction is to vindicate the Court's authority, criminal contempt proceedings are required.  Respondent also argues no contempt sanctions can be imposed for the valid exercise of the Fifth Amendment.

**II.     DISCUSSION**

   A.     <u>Legal Standard</u>

In reviewing a contempt judgment, the Eleventh Circuit first determines whether the nature of the contempt proceeding was civil or criminal.

Afro-American Patrolmen's League v. City of Atlanta, 817 F.2d 719, 723 n.3 (11th Cir. 1987).  "[C]onclusions about the civil or criminal nature of a contempt sanction are properly drawn, not from the subjective intent of a State's laws and its courts, but from an examination of the character of the relief itself."  Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 82, 828 (1994) (internal quotation marks and citations omitted).  If the relief is designed to compensate a complainant for losses or to coerce a party into complying with a court order, the contempt sanction is civil in nature.  See id.  Contempt is criminal in nature "if it is imposed retrospectively for a completed act of disobedience."  Id. (internal quotation marks omitted).

Fed. R. Crim. P. 42 governs criminal contempt proceedings.  Rule 42(a) provides that "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on notice."  Rule 42(a)(1) describes what the notice must contain; Rule 42(a)(2) indicates who the court must appoint as a prosecutor; and Rule 43(a)(3) provides that a person prosecuted for criminal contempt is entitled to a jury trial if federal law allows.  Because of these requirements, "[a] district court may not use the civil contempt power to impose what amounts to a punitive or criminal contempt sanction."  SEC v. Pension Fund of Am., L.C., 396 F. App'x 577, 583 (11th Cir. 2010) (internal quotation marks omitted) (quoting

United States v. City of Miami, 195 F.3d 1292, 1298 (11th Cir. 1999)); see also DuPont De Nemours & Company-Benlate Litig., 99 F.3d 363, 369 (11th Cir. 1996) (reversible error to impose criminal sanctions in a civil proceeding, which "did not afford [the contemnor] the procedural protections the Constitution requires for the imposition of criminal contempt sanctions").

The contempt power, however, "is merely one of many inherent powers that a court possesses; it is not the only type of inherent power that can be deployed." In re Charbono, 790 F.3d 80, 85 (1st Cir. 2015) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991)).  "The authority to issue a punitive sanction also may reside in a court's inherent power to police itself, thus . . . vindicating judicial authority without resort to the more drastic sanctions available for contempt of court."  Id. (internal quotation marks and brackets omitted) (citing Chambers, 501 U.S. at 46).  Courts have consistently recognized that, in addition to the contempt power, courts have the inherent power to sanction attorneys.  See, e.g., id.; In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006) ("Federal courts have the inherent power to impose sanctions on parties, lawyers, or both."); Mark Indus., Ltd v. Sea Captain's Choice, Inc., 50 F.3d 730, 733 (9th Cir. 1995) (non-contempt inherent-power sanction can be employed to vindicate a court's authority); United States v. Shaffer Equip. Co., 11 F.3d 450, 457 (4th Cir. 1993)

(inherent power to impose sanctions "is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers"); Harlan v. Lewis, 982 F.2d 1255, 1259 (8th Cir. 1993) (approving non-contempt monetary sanction as within district court's inherent powers); Eash v. Riggins Trucking Inc., 757 F.2d 557, 565-66 (3d Cir. 1985) (en banc) (noting that a court's "broad power to discipline attorneys as officers of the court for misconduct not properly categorized as contempt is substantially different from the contempt power"). The "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Chambers, 501 U.S. at 46.

Exercise of a court's inherent power is appropriate where a client or her attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001), abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146 (11th Cir. 2011) (quoting Chambers, 501 U.S. at 46). "The key to unlocking a court's inherent power is a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998). "A court should be cautious in exerting its inherent power and 'must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.'" Byrne, 261 F.3d at 1106 (quoting Chambers, 501 U.S. at 50). "Because the court's inherent power is so potent, it

8

should be exercised 'with restraint and discretion.'" Id. (quoting Chambers, 501 U.S. at 50).

Exercising its inherent power, a "court[] may levy sanctions (including punitive sanctions) for such varied purposes as disciplining attorneys, remedying fraud on the court, and preventing the disruption of ongoing proceedings." Charbono, 790 F.3d at 96 (citing Chambers, 501 U.S. at 43-44); see also Eash, 757 F.2d at 564 ("myriad violations of court rules, deadlines, or orders" may be grounds to impose sanctions based on a court's inherent authority, grounded in "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (quoting Link v. Wabash RR Co., 370 U.S. 626, 630-31 (1962))). A court exercising its inherent power may, among other remedies, "issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorneys' fees, and dismiss actions." Shaffer, 11 F.3d at 462.

B. Analysis

As a result of the dismissal of the principal case, civil contempt is not an available remedy. Here, the sole purpose of any sanction is to vindicate the Court's authority, and contempt proceedings would be criminal in nature and

9

would need to comply with the requirements of Fed. R. Crim. P. 42. As detailed above, courts have consistently recognized that, in addition to the contempt power, courts have the inherent power to sanction attorneys. "Requiring courts to await the conclusion of extensive investigation and prosecution procedures [for criminal sanctions] following every courtroom infraction would greatly compromise the court's ability to direct and control the proceedings." Goldstein v. Forbes, 260 F.3d 183, 199 (3d Cir. 2001). That was the case involving this infraction where the trial was about to commence. Under the circumstances of this case, the Court finds that a hearing to determine whether and how the Court should exercise its inherent power is appropriate.[1]

The Court addresses next Respondent's argument that a contempt sanction cannot be imposed for the valid exercise of the Fifth Amendment. "Disobedience of a court order unequivocally merits punishment save in instances in which compliance would necessarily result in an irrevocable and permanent surrender of a constitutional right." Kleiner v. First Nat. Bank of Atlanta, 751 F.2d 1193, 1208 (11th Cir. 1985) (internal quotation marks and emphasis omitted). Here,

---

[1] The Court notes that it has explicitly invoked its inherent power in connection with this matter. In its July 6, 2016, Order overruling Respondent's objections to the Court's July 1st Order, the Court noted its inherent authority to regulate Respondent's conduct in her capacity as an officer of the court. ([127] at 1-2 (quoting In re Gopman, 531 F.2d 262, 266 (5th Cir. 1976)).

Respondent ultimately—after multiple Court orders and conferences—asserted her Fifth Amendment right against self-incrimination to protect her from filing the affidavit required by the Court's orders.  The Court does not—nor could it—now require Respondent to forego her asserted Fifth Amendment rights by requiring her to comply with the Court's July 1st and July 6th Orders.   Rather, the misconduct at issue at this stage of the proceedings is Respondent's pattern of disruptive behavior and her flagrant disregard for the Court's orders without adequate justification or explanation.  Respondent's belated Fifth Amendment assertion does not, in itself, excuse her pattern of conduct leading up to her assertion of her right against self-incrimination.

In accordance with the requirement that a court's use of its inherent power must comply with the mandates of due process, Byrne, 261 F.3d at 1106 (quoting Chambers, 501 U.S. at 50), the Court shall hold a hearing to determine whether the Court should exercise its inherent power, and, if it should, what sanctions are appropriate.  The Court will not, at this stage, hold contempt proceedings in this matter.

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court shall hold a hearing on November 22, 2016, at 9:30 a.m., in Courtroom 1705, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, to determine whether the Court should exercise its inherent authority and, if so, whether sanctions are appropriate.

**SO ORDERED** this 26th day of October, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE