IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ELAINE ARMSTEAD,<br><br>    Plaintiff,<br><br>v.<br><br>ALLSTATE PROPERTY &<br>CASUALTY INSURANCE<br>COMPANY,<br><br>    Defendant,<br><br>SANDRA FINCH,<br><br>    Respondent. | 1:14-cv-586-WSD |

**OPINION AND ORDER**

**I. BACKGROUND**

On June 28, 2016, Defendant Allstate Property & Casualty Insurance ("Defendant"), as part of its response to a motion *in limine* filed by Plaintiff Elaine Armstead ("Plaintiff"), provided an affidavit. In the affidavit, Defendant's witness Mark Gould stated his belief that Sandra Finch, counsel for Plaintiff and the Respondent in this proceeding ("Respondent"), "entered areas of [his] office building without permission and took many photographs without permission . . . ." (Gould Aff. [115.1] ¶ 13). Mr. Gould's affidavit stated further that, during Mr. Gould's deposition, Respondent handed him a document titled "Steamatic Guide to

Restoration Services," which had been photographed page-by-page. (Id. ¶ 5). The photographs revealed Respondent's letterhead in the background. (Id.). Mr. Gould testified that it "became apparent to [him] Plaintiff's counsel had obtained the document from [his] office without [his] permission." (Id. ¶ 6). After he confronted Respondent about trespassing in his office, Respondent stated, "I caution you on defaming me, because if you defame me, I can promise you it will not be good." (Id. ¶ 9). Mr. Gould considered this a threat. (Id.). At the deposition, Respondent stated that, in order for trespassing to occur, "you have to have told somebody they can't come on your property . . . ." (Id. ¶ 8).

After the deposition, Mr. Gould went to his office and confirmed the location of the Steamatic Guide, which was on a bookshelf in his project manager's office. (Id. ¶ 11). Mr. Gould's office manager, Leonor Alarez, later told him:

> On May 20, 2016, she heard some noise in the office and asked if anyone was there. There was no response. So, Ms. Alarez continued working. Approximately 30 minutes later, Ms. Alarez was walking to the copier and came upon Plaintiff's counsel sitting in the reception area. Ms. Alarez asked Plaintiff's counsel how long she had been there, but she never received an answer. At which point, Plaintiff's counsel hand delivered the subpoena.

2

(Id. ¶ 12).  It is Mr. Gould's opinion and belief "that Plaintiff's counsel entered areas of [his] office building without permission and took many photographs without permission . . . ."  (Id. ¶ 13).

In connection with her reply in support of her motion *in limine*, Respondent attached a sworn affidavit [116.1] denying Mr. Gould's claim that she had trespassed on his property.  She stated the doors to Mr. Gould's place of business were not locked, and "there were no signs of 'no trespass.'"  ([116.1] ¶ 4).  Respondent stated she obtained the photographs of Mr. Gould's certifications "[t]hrough attorney work product and privileged investigation," and that the "framed certifications were obviously being displayed for potential customers to view in an effort to convince customers of the company's competency for hire." (Id. ¶ 6).  She stated that she has "litigated many cases involving franchises with different owners and ha[s] numerous sources for" the Steamatic Guide, including "data banks, other lawyers, other Steamatic franchisees, etc."  (Id. ¶ 9).  She did not address whether the Steamatic Guide pictures she used at the deposition were from the guide in Mr. Gould's office.

The Court found Respondent's explanations insufficient and evasive.  In light of Mr. Gould's affidavit, and because Respondent sought to admit into evidence at trial the Steamatic Guide and a photograph depicting certifications that

3

were displayed in a hallway away from the public reception areas of Mr. Gould's office, on July 1, 2016, the Court entered an Order [121] ("July 1st Order") requiring Respondent to provide, on or before July 5, 2016, an affidavit stating, in detail, how and under what circumstances she obtained the photographs of Mr. Gould's office and the Steamatic Guide so the Court could consider if these proposed exhibits would be allowed into evidence at trial.

On July 5, 2016, Respondent filed her Objections to Court Order to Produce an Affidavit [125] ("Objections").  Respondent objected to "lack of notice, due process and relevance."  ([125] at 1).  She stated that her representation of her client "has been within the boundaries of the law and ethics as she has zealously advocated for her client in the face of Defense Counsel's personal vendetta against her."  (Id. at 2).  After considering Respondent's Objections, on July 6, 2016, the Court entered an Order [127] ("July 6th Order") overruling them and requiring her to file the affidavit on or before 5:00 p.m. EST on July 6, 2016.  Respondent failed to file the required affidavit by the time ordered, and otherwise failed to respond to the July 6th Order, or explain why she could not or did not comply.

Beginning at 9:31 a.m. on July 7, 2016, the Court conducted the pretrial conference.  During the conference, the Court reiterated to Respondent that she was under a Court order to provide the required affidavit.  Respondent stated she

4

objected to the Court's orders, and that she did not "understand what the complaint is or what it is that I'm responding to." (Pretrial Conference Tr. [138] 4:23-24). Respondent questioned the lawfulness of the Court's orders. (See id. at 7:17-20). The Court explained to Respondent that the information required in the affidavit was to determine its impact on evidence that Respondent stated she intended to offer at trial. (Id. at 5:14-6:4). The Court offered to allow Respondent additional time to file the affidavit, and Respondent stated "I would like some additional time to respond." (Id. at 4:20-23). The Court stated "[i]f what you want is a little more time today to provide the information . . . then I will give you more time . . . ." (Id. at 6:24-7:2). Respondent stated "I will file a response." (Id. at 7:7). The Court gave her until the end of the day to do so.

By the end of the day, Respondent had not filed the required affidavit or explained why she would not or could not comply. At 5:07 p.m. on July 7, 2016, the Court entered an order requiring Respondent to show cause [136] ("Show Cause Order") why the Court should not hold her in contempt of the Court's July 1st Order and July 6th Order. Respondent still did not file the required affidavit or explain why she would not or could not comply.

On July 11, 2016, after the first day of the trial in this matter, the Court held a hearing ("Contempt Hearing") on the Show Cause Order. Respondent and

Defense counsel were present at the hearing. At the end of the hearing, Respondent suggested, for the first time, that she should not be required to file the required affidavit based on her Fifth Amendment right against self-incrimination. (Contempt Hr'g Tr. [147] 13:21-14:2). Respondent requested, and the Court agreed, that the hearing be continued so that she could be represented by counsel. (See id. at 17:22-18:13). On August 17, 2016, the Court entered an order clarifying that "it has not found [Respondent] in contempt, because [Respondent] advised the Court she needed more time to prepare and wanted to be represented at the hearing." ([152]). A hearing was scheduled for August 23, 2016.

On August 22, 2016, the Court held a pre-hearing status conference with Respondent's attorney. At the hearing, Respondent's attorney indicated his position, considering that Respondent had settled the case she was litigating and in which she intended to introduce the Gould materials, that contempt proceedings would be criminal in nature because there was no need now to compel Respondent's compliance with the Court's orders. He argued further that the requirements of Fed. R. Crim. P. 42 would apply to any further contempt hearing. The same day, the Court issued an order [155] requiring Respondent to file, on or before September 14, 2016, her legal authority and argument regarding her opinion

as to the nature of the hearing and the procedural requirements to conduct it. The Court continued the contempt hearing scheduled for August 23, 2016.

On September 19, 2016, Respondent filed the memorandum the Court ordered her to submit. ([158]). Respondent argued that, the principal civil case having been dismissed after the settlement, there is no possibility of civil contempt, and, where the sole purpose of a sanction is to vindicate the Court's authority, criminal contempt proceedings are required. Respondent also argued contempt sanctions could not be imposed for the valid exercise of a Fifth Amendment privilege.

On October 26, 2016, the Court issued an order [159] ("October 26th Order") in response to the arguments in Respondent's September 19, 2016, submission. The Court determined that criminal contempt proceedings were not appropriate and agreed not to conduct them. The Court advised, however, that it would conduct a hearing to determine whether sanctions were appropriate to address Respondent's professional conduct pursuant to the Court's inherent power to sanction attorneys. (October 26th Order at 9-10). The Court acknowledged that a contempt sanction cannot be imposed for the valid exercise of the Fifth Amendment, but that the misconduct at issue at this stage of the proceedings is "Respondent's pattern of disruptive behavior and her flagrant disregard for the

Court's orders without adequate justification or explanation." (Id. at 10-11). The Court set a hearing for November 22, 2016, to determine whether the Court should exercise its inherent authority to sanction attorneys and, if so, whether sanctions are appropriate. The hearing was rescheduled for November 29, 2016.

On November 29, 2016, the Court held a hearing ("Inherent Power Hearing") to determine whether the Court should exercise its inherent power to sanction Respondent. At the hearing, Respondent argued that the Court's October 26th Order is "not specific enough" to put Respondent on notice "as to what it is we have to defend against," and that Respondent "do[es] not know what orders . . . [she] disregarded without adequate justification or explanation." (November 29, 2016, Hr'g Tr. 4:5-15). Respondent argued that her request, during the July 7, 2016, pretrial conference, for additional time to respond to the Court's orders was an adequate response to the Court's orders. (Id. at 7:22-8:17). Respondent also argued that, should the Court find monetary sanctions appropriate, the Court should take Respondent's financial position into account. (Id. at 10:11-14). Respondent submitted an exhibit reflecting that her 2016 year-to-date income is $27,500.00. (See id. at 10:21-11:21). She stated she is an employee of her husband's firm and that is the only salary she received. (See id. at 11:2-12). The Court requested Respondent's credit card statements for the last six months


"to see what money [Respondent] has been spending to see if that tracks against" Respondent's claimed income of $27,000. (Id. at 11:17-21). Respondent stated her husband pays a large portion of her credit card bills, (id. at 12:6-11), and she declined to provide her credit card statements, stating they were irrelevant, (id. at 13:18-19). Finally, Respondent noted that, on September 29, 2016, the United States Supreme Court granted a writ of certiorari in Goodyear Tire v. Haeger to determine the contours of a court's inherent powers, arguing that the Court should not proceed until the Goodyear case was decided. (Id. at 17:6-18:4).

## II.     DISCUSSION

### A.     Legal Standard

Courts have the inherent power to sanction attorneys. See, e.g. In re Charbono, 790 F.3d 80, 85 (1st Cir. 2015); In re Sunshine Jr. Stores, Inc., 456 F.3d 1291, 1304 (11th Cir. 2006) ("Federal courts have the inherent power to impose sanctions on parties, lawyers, or both."); Mark Indus., Ltd v. Sea Captain's Choice, Inc., 50 F.3d 730, 733 (9th Cir. 1995) (non-contempt inherent-power sanction can be employed to vindicate a court's authority); United States v. Shaffer Equip. Co., 11 F.3d 450, 457 (4th Cir. 1993) (inherent power to impose sanctions "is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers"); Harlan v. Lewis, 982 F.2d 1255, 1259 (8th Cir. 1993)

(approving non-contempt monetary sanction as within district court's inherent powers); Eash v. Riggins Trucking Inc., 757 F.2d 557, 565-66 (3d Cir. 1985) (en banc) (noting that a court's "broad power to discipline attorneys as officers of the court for misconduct not properly categorized as contempt is substantially different from the contempt power"). The "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991).

Exercise of a court's inherent power is appropriate where a client or her attorney has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001), abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146 (11th Cir. 2011) (quoting Chambers, 501 U.S. at 46). "The key to unlocking a court's inherent power is a finding of bad faith." Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998). "A court should be cautious in exerting its inherent power and 'must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.'" Byrne, 261 F.3d at 1106 (quoting Chambers, 501 U.S. at 50). "Because the court's inherent power is so potent, it should be exercised 'with restraint and discretion.'" Id. (quoting Chambers, 501 U.S. at 50).

"Once unlocked, the [inherent] power carries with it the authority to assess attorney's fees as a sanction for bad faith conduct." Sciarretta v. Lincoln Nat. Life Ins. Co., 778 F.3d 1205, 1212 (11th Cir. 2015) (citing Chambers, 501 U.S. at 45-46); see also Charbono, 790 F.3d at 96 (exercising its inherent power, a "court[] may levy sanctions (including punitive sanctions) for such varied purposes as disciplining attorneys, remedying fraud on the court, and preventing the disruption of ongoing proceedings"); Eash, 757 F.2d at 564 ("myriad violations of court rules, deadlines, or orders" may be grounds to impose sanctions based on a court's inherent authority, grounded in "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (quoting Link v. Wabash RR Co., 370 U.S. 626, 630-31 (1962))).

    B.    Analysis

        1.    Due Process

Respondent first argues she has not been afforded due process because the Court's October 26th Order is "not specific enough" to put Respondent on notice "as to what it is we have to defend against," and that Respondent "do[es] not know what orders . . . [she] disregarded without adequate justification or explanation." (November 29, 2016, Hr'g Tr. 4:5-15). This argument is disingenuous. Over the course of multiple hearings and orders, including the Court's October 26th Order,

the Court made clear to Respondent that her failure to comply with the Court's July 1st and July 6th Orders were central to the issue here. The Court specified in its October 26th Order that "Respondent ultimately—after multiple Court orders and conferences—asserted her Fifth Amendment right against self-incrimination . . . ." (October 26th Order at 11). The Court then stated that it "does not—nor could it—now require Respondent to forego her asserted Fifth Amendment rights by requiring her to comply with the Court's July 1st and July 6th Orders. Rather, the misconduct at issue at this stage of the proceedings is Respondent's pattern of disruptive behavior and her flagrant disregard for the Court's orders without adequate justification or explanation." (Id.). The October 26th Order is clear that Respondent's repeated and flagrant disregard for the Court's July 1st and July 6th Orders, as detailed above, is the conduct at issue here. The Court also notes that Respondent has had multiple occasions—including at the pretrial conference, the Contempt Hearing, the August 22, 2016, pre-hearing status conference, and the Inherent Power hearing—to clarify the basis for the Court's actions and to present evidence and argument that her conduct was not contemptuous, that she did not act in bad faith, or that sanctions otherwise are not warranted. Respondent has been afforded more than the process she is due.

2. <u>Bad Faith</u>

The Court finds Respondent acted in bad faith when she repeatedly and flagrantly disregarded the Court's orders. The Court's July 1st Order required Respondent to provide, on or before July 5, 2016, an affidavit providing specific information. Rather than providing the required affidavit or asserting her Fifth Amendment right against self-incrimination, on July 5, 2016, Respondent filed her Objections, arguing a "lack of notice, due process and relevance." ([125] at 1).[1] The following day, the Court overruled Respondent's Objections and required Respondent to file the affidavit on or before 5:00 p.m. EST on July 6, 2016. Respondent again failed to file the required affidavit or to explain why she could not or did not comply. On the morning of July 7, 2016, during the pretrial conference, the Court again reiterated to Respondent that she was under a Court order to provide the required affidavit. Respondent questioned the lawfulness of the Court's orders. The Court offered "a little more time today to provide" the affidavit, and Respondent stated "I will file a response." ([138] 6:24-7:7). Despite this representation, Respondent again failed to file the affidavit or to explain why

---

[1] In view of the fact that Respondent had time to draft and file her four-page Objections by July 5, 2016, Respondent's objection based on a "lack of notice" is not credible.

13

she would not or could not do so.[2] The evening of July 7, 2016, the Court issued its Show Cause Order. Respondent did not provide an adequate justification for her failure to file the required affidavit until July 11, 2016, ten days after the Court first required it.

In short, Respondent, fully aware she was under Court orders to provide the affidavit, chose instead (1) to challenge the Court's authority to issue the orders, and (2) to ignore the orders. Under these circumstances, the Court finds Respondent acted in bad faith when she failed to comply with the Court's July 1st and July 6th Orders without adequate justification or explanation.

### 3. Sanctions

Having found Respondent acted in bad faith, the Court may exercise its inherent power to sanction Respondent. See Barnes, 158 F.3d at 1214 ("The key to unlocking a court's inherent power is a finding of bad faith."). With respect to the sanctions available, Respondent notes that, on September 29, 2016, the United

---

[2] Respondent argues that her request, during the July 7, 2016, pretrial conference, for additional time to respond to the Court's orders, was an adequate response to the Court's orders. (November 29, 2016, Hr'g Tr. 7:22-8:17). First, the context of the hearing shows that the Court allowed Respondent until the end of the day on July 7, 2016, to file the affidavit or otherwise respond to the Court's orders, which Respondent failed to do. Second, Respondent's argument overlooks her failure to respond to the Court's July 6th Order requiring her to file the affidavit by 5:00 p.m. EST on July 6, 2016.

States Supreme Court granted a writ of certiorari in Goodyear Tire v. Haeger, No. 15-1406, 137 S. Ct. 30 (2016). The question the Supreme Court will decide is whether a federal court is required to tailor compensatory civil sanctions imposed under inherent powers to harm directly caused by sanctionable misconduct when the court does not afford sanctioned parties the protections of criminal due process. See id.; Petition for Writ of Certiorari, Haeger, 2016 WL 2937089 (2016) (No. 15-1406). Because the Court is exercising its inherent power rather than proceeding under the criminal contempt rules, the Supreme Court's decision in Haeger may affect the scope of sanctions available here. Without weighing in on the merits of the issue before the Supreme Court in Haeger, the Court here chooses to tailor the sanctions it imposes to the harm directly caused by Respondent's sanctionable misconduct.

Defendant participated in the July 7, 2016, pretrial conference, nearly all of which was devoted to discussing Respondent's failure to comply with the Court's July 1st and July 6th Orders. Defendant also participated in the July 11, 2016, Contempt Hearing. Had Respondent not engaged in her sanctionable misconduct—that is, had she provided an adequate explanation or justification for her failure to comply with the Court's July 1st and July 6th Orders—Defendant would not have incurred attorney's fees participating in, and preparing for, these

hearings.  Respondent is required to pay Defendant these fees.  The Court finds the fees will not be so great as to unduly burden Respondent.  Defendant shall, on or before December 16, 2016, submit to the Court the attorney's fees it incurred in connection with its participation in the pretrial conference and the Contempt Hearing.  The Court will review the fees detailed and evaluate them as an appropriate sanction for Respondent's bad faith conduct.

The Court imposes a further sanction tailored toward Respondent's bad faith conduct.  A lawyer has legal, ethical, and professional responsibilities to a court.  Respondent failed to meet these standards in this case.  To encourage Plaintiff to engage in proper litigation conduct in the future, and to assist other lawyers to understand their legal, ethical, and professional obligations to the court, the Court also requires Respondent to author, personally, an article to be submitted for publication to the Georgia Bar Journal and the Arizona Attorney (the "Publications").  The article is required to discuss the practical and legal consequences of failing to be candid with the court and failing to comply with court rules and orders.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court finds Attorney Sandra Finch refused, in bad faith, to comply with lawful orders of the Court, and the Court exercises its inherent power to sanction her.

**IT IS FURTHER ORDERED** that Defendant Allstate Property & Casualty Insurance Company shall, on or before December 16, 2016, submit to the Court the attorney's fees it incurred in connection with its participation in the pretrial conference and the Contempt Hearing.

**IT IS FURTHER ORDERED** that Respondent shall, on or before February 28, 2017, personally author and submit for publication to the <u>Georgia Bar Journal</u> and the <u>Arizona Attorney</u> an article discussing the practical and legal consequences of failing to be candid with the court and failing to comply with court rules and orders.  The article shall be no fewer than 5,000 words in length and Respondent shall, on or before March 15, 2017, submit to the Court a copy of the article, evidence of each Publication's receipt of the article, and that Respondent asked for it to be considered for publication.

**SO ORDERED** this 6th day of December, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE