```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF GEORGIA
 2                          ATLANTA DIVISION

 3   ELAINE ARMSTEAD                     )
                                         )
 4            Plaintiff,                 )    CIVIL ACTION FILE
                                         )    NO. 1:14-CV-586-WSD
 5   v.                                  )
                                         )    ATLANTA, GEORGIA
 6   ALLSTATE PROPERTY & CASUALTY        )
     INSURANCE COMPANY                   )
 7                                       )
              Defendant.                 )
 8   _____)

 9
                        TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE WILLIAM S. DUFFEY, JR.,
                     UNITED STATES DISTRICT JUDGE
11
                           SHOW CAUSE HEARING
12                    Tuesday, November 29, 2016

13

14

15       APPEARANCES OF COUNSEL:

16       For Ms. Finch:            LAW OFFICE OF BRUCE HARVEY
                                     (By:  Bruce S. Harvey)
17

18

19

20

21
             Proceedings recorded by mechanical stenography
22            and computer-aided transcript produced by
                    NICHOLAS A. MARRONE, RMR, CRR
23                     1714 U. S. Courthouse
                      75 Ted Turner Drive, S.W.
24                       Atlanta, GA  30303
                          (404) 215-1486
25
```

```
1                    Tuesday Morning Session

2                      November 29, 2016

3                          9:31 a.m.

4                          -- -- --

5                    P R O C E E D I N G S

6                          -- -- --

7                       (In open court:)

8          THE COURT:  Good morning.  This is the hearing
9   that's conducted pursuant to my order dated October 10th of
10  2016.
11         The date of the hearing has been continued at the
12  request of plaintiff's counsel.  I am happy to accommodate
13  that, and I appreciate us being able to do it now rather than
14  in December.
15         I set out in my October 10th order the purpose of
16  the hearing and the authorities upon which I am relying in
17  this matter, and now this is the opportunity that I'm going
18  to afford to the respondent to present whatever evidence or
19  argument she wants in connection with the matters set forth
20  in the October 10th order.
21         Mr. Harvey?
22         MR. HARVEY:  Good morning, Judge.
23         THE COURT:  Good morning.
24         MR. HARVEY:  I am a little bit confused about your
25  reference to the October 10th order.  Can I -- I believe
```

1  I would refer to the Court's October 26th order, which is
2  Document No. 159, and I think that kind of frames what
3  I thought to be -- frames the issue.
4           THE COURT:  Well, I said that this is not a
5  contempt hearing.  I agreed with you on that position.
6           MR. HARVEY:  Yes.
7           THE COURT:  But I still have inherent powers.  And
8  so those authorities, whatever order they happen to be in.
9           MR. HARVEY:  No, I agree, I'm not saying you don't
10 have inherent powers.  I agree that you do.  The question I
11 think is the contours of those powers.
12          But under the Court's October 26th --
13          THE COURT:  Right, that's the Docket Entry 159.
14          MR. HARVEY:  Docket -- yes, sir, Docket 159, Judge.
15          THE COURT:  Sorry.
16          MR. HARVEY:  On page eleven of that order, here
17 is -- and I quote:  Rather, the misconduct at issue at this
18 stage of the proceedings is respondent's -- and there are two
19 things -- pattern of disruptive behavior, that's number one,
20 and her flagrant disregard for the Court's orders without
21 adequate justification or explanation.  That's number two.
22          You also indicate, continuing along in that
23 paragraph on page eleven of Document 159, that the belated
24 Fifth Amendment assertion does not in itself excuse her
25 pattern of conduct.

1   　　　　　So it seems to me that the Court is wishing to
2   exercise its inherent power with regard to a pattern of
3   disruptive behavior and/or flagrant disregard for the Court's
4   orders without adequate justification or explanation.
5   　　　　　Now, I will say that since we are not here on a
6   contempt hearing because the Court did agree with our prior
7   pleading in that regard, that a pattern of disruptive
8   behavior is so amorphous and ambiguous as to not give us an
9   opportunity -- I guess I am making a due process argument --
10  not specific enough or so amorphous that I don't have any
11  clue as to what it is we have to defend against, because I
12  don't know what in the Court's mind constitutes a pattern of
13  disruptive behavior, and I do not know what orders the
14  respondent, Ms. Finch, disregarded without adequate
15  justification or explanation, neither of which --
16  　　　　　THE COURT:  I'm sorry, that's all in the order,
17  Mr. Harvey.
18  　　　　　I know you are making a record on this; I'm happy
19  for you to do that.  But it's clear in this order that she
20  was ordered at least two times to respond to an order of the
21  Court, and she neither did that nor explained why she didn't
22  do that.
23  　　　　　So why don't you start with that.
24  　　　　　MR. HARVEY:  Okay.  Well, I'm unaware of which
25  order you are referring to.  In this order, in the October

1   10th -- I mean, the October 26th order?
2           THE COURT:  Aren't you aware, having gone back and
3   read the transcript in this case, that she was ordered twice
4   to provide specific information about why she -- where she
5   acquired information that was at issue in the case?
6           MR. HARVEY:  Yes, yes, yes.
7           THE COURT:  And she was twice ordered to do that
8   and given specific dates upon which to respond, and neither
9   responded, nor did she explain why she didn't respond on
10  either of those occasions.
11          So why don't you start with that.
12          MR. HARVEY:  Well, in the first place, I don't
13  think that constitutes a pattern of disruptive behavior under
14  any circumstances.
15          THE COURT:  Well, let's just start with that.
16  That's one of the things that I pointed to in the orders.
17  Explain to me why somebody is not required to respond to a
18  lawfully-issued order of the Court either by providing the
19  information required or explaining why it's not being
20  provided.
21          MR. HARVEY:  Well, first, I think that Ms. Finch
22  did, in fact, respond.  One.
23          THE COURT:  Well, good, tell me what that is.  What
24  was her response in your mind?
25          MR. HARVEY:  Well, her response, if I can -- in the

1  first instance, I think there was a July 1st order, which is
2  Document 121, I believe, from the Court.  You ordered her to
3  respond within a certain period of time, and I think that was
4  July 5th.
5            And there was then a hearing --
6            THE COURT:  Well, what you should do if you are --
7  this is your due process hearing.  If you want to put
8  evidence in the record upon which you are relying to respond
9  to this required hearing, let's do that so that the record is
10 clear.
11           And you have all those documents, and Ms. Finch is
12 over there going through the file.  So let's just get those
13 in the record so that it's clear to me and it's clear to the
14 Court of Appeals what it is that you are claiming that was
15 her response to the two orders.
16           MR. HARVEY:  Well, my response to that is I think
17 that you are now going back to the contempt proceeding --
18           THE COURT:  No, I'm not.
19           MR. HARVEY:  -- with regard to that particular
20 order, because you are --
21           THE COURT:  Mr. Harvey, I'm not going to play this
22 game with you.  I'm requiring you -- and I will consider what
23 you have to say, and if you want to make a further submission
24 saying that now that you are claiming I'm going back to the
25 contempt proceeding, you may.  But this is an evidentiary

```
1    hearing, then I will listen to whatever argument you want to
2    make.
3              But I'm not going to take a position.  I just set
4    this hearing because I wanted Ms. Finch here to hear from her
5    as to what she wants to say to me to consider in connection
6    with this decision on whether or not I impose a response
7    under my inherent powers.  So let's get on with it.
8              MR. HARVEY:  Okay.  You know, I object to that
9    characterization, because I think it is outside your October
10   26th, '16, order, which does not give us --
11             THE COURT:  That's fine.  Let's go, first, whatever
12   you want to introduce into evidence, let's do that first, and
13   then I will let you make your argument.
14             MR. HARVEY:  I think the record speaks for itself.
15             THE COURT:  Tell me what parts of the record you
16   are relying on.
17             MR. HARVEY:  I think I am referring to, for
18   example, the July 6th hearing before Your Honor.
19             On the July 6th hearing before Your Honor,
20   Your Honor gave Ms. Finch till July 5th.  Ms. Finch said,
21   I was traveling, I didn't get the order.
22             You said at the July 6th hearing, Do you want
23   additional time to respond?
24             She said, and I quote -- this is at pages four to
25   five of the transcript -- I would like additional time to
```

1  respond.  But I also have an objection, again, because
2  I really don't understand, et cetera.  This is at pages four
3  to five of the July 6th transcript.
4          I believe then that you then had a hearing on July
5  11th --
6          MS. FINCH:  7th.
7          MR. HARVEY:  7th -- no, no, no, I'm sorry, a show
8  cause hearing on July 10th, I believe, at which time
9  Ms. Finch indicated, To the extent there is any allegation
10 that I did anything or if there is any proof that I did
11 anything, I would not be required to comment on any of that
12 on my Fifth Amendment rights.  So she exercised those Fifth
13 Amendment rights.
14         It seems to me that that's, (A), an adequate
15 response; (B), she did specifically ask for additional time
16 to respond; and when she responded, she appropriately
17 exercised her Fifth Amendment rights.
18         So it seems to me that that one instance is the
19 only thing that we have to defend against.
20         THE COURT:  All right.  Anything else?
21         MR. HARVEY:  One moment.
22         Judge, I don't have any other specific evidence.
23 I think that the record as it is adequately comports with at
24 least the only instance that I understand that the Court is
25 inquiring about at this particular time.

```
 1              THE COURT:  No, that was the first.  I want you to
 2   respond to the orders that have been entered in this case,
 3   and specifically the matters set out in the October 26th
 4   order, which is Docket Entry 159.
 5              And if there is nothing else that you want to
 6   present because you claim that there is nothing else to
 7   respond to, that's fine.
 8              MR. HARVEY:  Well, as long as the Court understands
 9   that -- well, I made the record on the first.
10              THE COURT:  I understand you made the record.
11              MR. HARVEY:  Okay, all right.
12              THE COURT:  Now, would Ms. Finch like to say
13   anything before we conclude?
14              MR. HARVEY:  Well, there are also other matters.
15   We don't -- I don't know and we have not been advised if the
16   Court is proceeding under anything other than the global
17   inherent powers of the Court.  I don't know what sanctions,
18   if any, the Court is contemplating.  I don't know
19   whether there is --
20              THE COURT:  Well, I don't have to tell you what
21   sanctions I'm contemplating until the hearing is over and
22   I deliberate on what would be appropriate.
23              If you want to suggest what you think sanctions are
24   appropriate, I would listen to those.
25              MR. HARVEY:  Well, I think that under a number of
```

1  cases, the court set out specifically if there are any
2  ethical violations or any other violations, the court has --
3  the courts have set out here are the ethical violations and
4  the rules that they violate; (B), here are the sanctions that
5  the court is contemplating.
6        So I think there is plenty of authority for the
7  fact that I think the Court has an obligation if the Court is
8  going to exercise its inherent authority to say here is what
9  it is that I am sanctioning you for, here are the sanctions
10 that I contemplate.
11       And, finally, if you are contemplating monetary
12 sanctions, then the financial position of the respondent is
13 something that the Court can and should take into
14 consideration.
15       THE COURT:  So what are her financial conditions
16 that would impact that?
17       MR. HARVEY:  Can I -- I would like to mark an
18 exhibit for you, Judge.
19       THE COURT:  You may.
20       So what is this?
21       MR. HARVEY:  That's her financial statement, as far
22 as I understand it, Judge, for her --
23       THE COURT:  For what period?
24       MR. HARVEY:  I'm sorry?
25       THE COURT:  For what period?

```
 1              MR. HARVEY:  For this year, for 2016.
 2              THE COURT:  And is she a partner in the firm?
 3              MR. HARVEY:  I think she is.
 4              MS. FINCH:  No.
 5              MR. HARVEY:  Well, it's a sole practice.
 6              MS. FINCH:  It's Chris's.  I am an employee.
 7              MR. HARVEY:  You can address the Court.
 8              MS. FINCH:  I'm an employee of the firm.
 9              In transitioning from Georgia to Arizona, I had to
10   close my practice, and I have moved to Arizona with no
11   clients.  And I am only working part-time, spending time with
12   my child.
13              MR. HARVEY:  And, secondly, just for the Court's
14   information --
15              THE COURT:  Well, can I ask --
16              MR. HARVEY:  Yes, sir.
17              THE COURT:  Because this is pretty bare bones,
18   I would like to see for the last six months her credit card
19   statements to see what money she has been spending to see if
20   that tracks against somebody who is claiming that they have
21   made an aggregate of $27,000.  Could I get that?
22              MR. HARVEY:  I don't know.
23              THE COURT:  Could you ask?  I know you can get it.
24              MR. HARVEY:  You know what my gut reaction is.
25   I think that's a little personal, but --
```

```
1            THE COURT:  Well, it will be --
2            MS. FINCH:  Actually, I don't think it's relevant
3    because --
4            MR. HARVEY:  Wait.  Just tell me.  Thank you.
5            (Counsel and client confer.)
6            MR. HARVEY:  The problem with that, Judge, is that
7    as I understand it, that there is -- I don't think the credit
8    card is reflective of income/expenses because I think her
9    husband is paying either a large portion or all of the credit
10   card bills.  So we are talking about a family income as
11   opposed to an individual's income.
12           So I don't know the answer to that question.
13           THE COURT:  Well, I do.  Are you willing to provide
14   the credit card statements for the last six months?
15           (Attorney and client confer.)
16           MR. HARVEY:  Thank you for waiting, Judge.
17           THE COURT:  It's a real easy request.  Yes or no?
18           MR. HARVEY:  Well, actually it's not.  I mean, my
19   first reaction if you asked me for my credit card bills would
20   be to say absolutely not because I don't necessarily think --
21           THE COURT:  Well, you have joined the issue by
22   submitting this saying that she for the last year has been
23   living on $27,500.
24           MR. HARVEY:  And that is her income.
25           THE COURT:  That's her income.
```

1     MR. HARVEY:  Correct.
2     THE COURT:  But I want to know what her spending is
3  to see whether or not she has other resources of income.
4     MR. HARVEY:  Well, I'm confident that she does.  I
5  mean, I'm confident that her husband is paying her bills,
6  paying most of the bills, and --
7     THE COURT:  Well, you are making this
8  representation --
9     MR. HARVEY:  But you --
10    THE COURT:  -- but you don't know the answer to
11 that.
12    Are you giving to me the six months of credit card
13 statements or not?  Just tell me.
14    MR. HARVEY:  I don't know.
15    MS. FINCH:  Your Honor, I --
16    MR. HARVEY:  Tell me.
17    (Attorney and client confer.)
18    MR. HARVEY:  Thanks for the offer, Judge, but we
19 will respectfully decline.
20    THE COURT:  All right.  Thank you.  And I will take
21 that into account in determining whether or not this
22 information is credible since it's just a printout.
23    MR. HARVEY:  Well, I think that --
24    THE COURT:  And is this a marital relationship or
25 other kind of relationship?

1          MR. HARVEY:  Marital, marital.
2          I also want to point out two other things, Judge,
3    for the record and for your consideration.
4          First, that I know that you are familiar with the
5    historical background of the Court's orders, but Mr. Gould,
6    the witness, has filed a bar complaint with the State Bar of
7    Georgia.  So that there is a pending bar complaint with
8    regard to the genesis of your orders and the reason that we
9    are here.  That's number one.
10         THE COURT:  Well, first, I don't think that's
11   true.  I think his complaint was filed before we had the
12   problems of noncompliance with the order.  So I'm not sure
13   that he addressed that.
14         MR. HARVEY:  I think it was afterwards.  But it's
15   still pending.  It's pending.
16         THE COURT:  Right.  And what's the status of that?
17         MR. HARVEY:  It's still pending.
18         THE COURT:  Has there been an interview of
19   Ms. Finch or not?
20         MR. HARVEY:  I think Ms. Finch has filed a
21   response.  There has been a complaint, a response, and
22   it's --
23         THE COURT:  And when was the response filed?
24         MS. FINCH:  It was like a week ago, two weeks ago.
25         MR. HARVEY:  Recently.

```
 1                THE COURT:  Okay.
 2                MR. HARVEY:  And, secondly --
 3                THE COURT:  And how long do those matters usually
 4    take, do you know?  I assume there is an investigating
 5    officer; is that right?
 6                MR. HARVEY:  Well, once a complaint is filed, the
 7    respondent is -- or if it meets, you know, the we are going
 8    to continue, we are going to open an investigation, then the
 9    respondent is offered an opportunity to respond.  Then
10    I guess the state bar makes a determination as to whether or
11    not there is going to be or if a hearing is necessary.  Then
12    a hearing is had.  Then, you know, the state bar makes a
13    determination as to what, if anything, the state bar is going
14    to do.
15                I have had them last a year.  So it takes some
16    time.  It's not an immediate response.
17                Once they say, yes, we are going to go forward,
18    that kind of prolongs the proceeding.
19                THE COURT:  Right.  Okay.
20                MR. HARVEY:  And, second -- so there is already an
21    inquiry with regard to this particular matter.
22                THE COURT:  But how is that relevant to what I'm
23    holding this hearing for?
24                MR. HARVEY:  Well, because I don't know what
25    sanctions the Court is contemplating.  One of the sanctions
```

1   could be, I would assume, some reference to the state bar,
2   some reference under Rule 80, the local Rule 83 to the chief
3   judge for some disciplinary -- potential disciplinary action
4   in the United States District Court for the Northern District
5   of Georgia.
6          So what relevance it has is that there is already
7   pending a proceeding with regard to Ms. Finch with regard to
8   this incident.
9          And, lastly, on September 29th of 2016 --
10         THE COURT:  You are probably aware that we remove
11  people from the list of attorneys allowed to practice before
12  the bar for matters other than a response or discipline
13  through the state judicial authorities.  We have done that.
14         MR. HARVEY:  Sure, and I would expect that those
15  are done under Rule 83, which has its own built-in procedural
16  protections as well.
17         THE COURT:  It does, right.
18         MR. HARVEY:  Well, again, I think it's relevant
19  because I don't know what sanctions, if any, the Court is
20  contemplating.
21         THE COURT:  Well, I can't sanction her by removing
22  her from the list of approved attorneys from the bar.  I can
23  make that recommendation, but the court ultimately has the
24  authority to do that.
25         MR. HARVEY:  Right.

1    THE COURT: So I couldn't sanction her by saying
2  she can't practice here. The court would have to do that,
3  and she would have due process rights in that process.
4    MR. HARVEY: I agree.
5    THE COURT: Right.
6    MR. HARVEY: And on September 29th, 2016, the
7  U.S. Supreme Court granted cert in a case called *Goodyear
8  Tire v. Haeger*, H-a-e-g-e-r, and the question presented in
9  that case was the contours of the court's inherent powers.
10   So there is pending before the U.S. Supreme Court a
11 case which -- and nobody disagrees that the court has
12 inherent powers, but just how they are to be exercised. And
13 there is a great wealth of law out there that says, of
14 course, like the parsimony principle in sentencing, the
15 parsimony principle applies to the inherent power of the
16 court, the least onerous sanction should be the sanction that
17 the court imposes, if the court is going to impose a
18 sanction.
19   And in *Goodyear Tire*, not only are the contours of
20 the inherent power -- the court's inherent power at issue,
21 but whether or not there is and must be, which I thought they
22 have already said, a direct causation requirement if there
23 are going to be any monetary sanctions imposed under the
24 inherent powers.
25   So I would suggest to the Court that whatever

1   sanctions the Court is contemplating, it might be wise to
2   wait and see what the U.S. Supremes do in *Goodyear Tire v.*
3   *Haeger,* if, in fact, they only have eight folks up there at
4   this particular time.
5           Because I don't know whether we are going to have
6   nine at any time soon.  Unless they nominate me, which I tend
7   to doubt in a Republican administration.
8           THE COURT:  All right.  Anything else?
9           MR. HARVEY:  No, sir.
10          THE COURT:  All right.  I will take all of this
11  into consideration and issue a written order.  Thank you for
12  being here.
13          And we will be in recess.
14          MR. HARVEY:  Thank you, Judge.
15              (Proceedings adjourn at 9:55 a.m.)

C E R T I F I C A T E

UNITED STATES OF AMERICA      :
                              :
NORTHERN DISTRICT OF GEORGIA  :

      I, Nicholas A. Marrone, RMR, CRR, Official Court Reporter of the United States District Court for the Northern District of Georgia, do hereby certify that the foregoing 18 pages constitute a true transcript of proceedings had before the said Court, held in the city of Atlanta, Georgia, in the matter therein stated.

      In testimony whereof, I hereunto set my hand on this, the 6th day of January, 2017.

*/s/ Nicholas A. Marrone*
_____
NICHOLAS A. MARRONE, RMR, CRR
Registered Merit Reporter
Certified Realtime Reporter
Official Court Reporter
Northern District of Georgia